THE STATE v. LOUIE CANTRELL, Appellant.—6 S. W. (2d) 839.

Division Two, May 25, 1928.

*North T. Gentry*, Attorney-General, and *Claud Curtis*, Special Assistant Attorney-General, for respondent.

HENWOOD, C.—By an indictment filed in the Circuit Court of Oregon County, appellant, Fred Cantrell and Bunk Sandridge were jointly charged with stealing seven chickens from the messuage of Mrs. Alice Kellett in the nighttime. Appellant took a severance, and, upon trial, the jury found him guilty and fixed his punishment at imprisonment in the penitentiary for two years. He was sentenced in accordance with the verdict, and appealed.

It appears from the evidence offered by the State that Mrs. Alice Kellett, a widow, and her five children were living on premises owned by Harry Warren, near the Guiteau School in Oregon County. She had seventy-two hens and two roosters, and her chickens roosted in a shed, located near her dwelling house, on the same premises, and used in connection therewith. The door on the shed was "closed all the time," and the chickens went in and out through "a hole." One Sunday afternoon in February 1927, while feeding her chickens, Mrs. Kellett missed six white hens and one red hen. Louie Cantrell (appellant), Fred Cantrell and Newt Cantrell are brothers, and nephews of Mrs. Kellett. A few weeks after the chickens were missed, appellant told Mrs. Kellett's son, Bascom Kellett, that he and his brother Fred and Bunk Sandridge stole the chickens from their roost in the shed about midnight on Saturday, February 5, 1927. Appellant made the same statement to Harry Warren sometime during the month of May, 1927.

Bascom Kellett testified that he talked to appellant about the chickens one night in his (Kellett's) yard, near the house, and appellant told him that he and his brother Fred and Bunk Sandridge were out in a car on the Saturday night in question, when he (Bascom Kellett) was away from home, and Fred and Bunk told him (appellant) they were going to steal some of Aunt Alice's chickens; that, at first, he (appellant) protested, but they went ahead and got six white hens and one red hen, while he waited near the car; that he helped them in carrying the chickens to the car, and in taking the chickens to Bunk Sandridge's home, where the six white hens were turned loose; and that "on the way over to Bunk's they smothered the red hen to death and they ate her." In further testifying, this witness said that all of his mother's chickens roosted in the shed; that it was "along near the first of February" when the chickens were missed; and that they had counted the chickens "probably a day or two" before.

Mrs. Kellett testified that she heard the conversation between appellant and her son. Bascom, in which appellant said that he and

Fred Cantrell and Bunk Sandridge stole her chickens. She further testified, on cross-examination, that, sometime after she missed her chickens, Newt Cantrell told her that her chickens were at "Bunk Sandridge's."

According to the testimony of Harry Warren, appellant made practically the same statement to him that he made to Bascom Kellett, except that he talked more freely. At that time appellant and Fred Cantrell and Buck Sandridge had been jointly indicted for this offense. Among other things, in his talk with Mr. Warren, appellant said: "They coaxed me into that chicken stealing deal. They have threatened my life, but I am going to tell the truth."

Appellant took the stand and disclaimed any connection with the stealing of the chickens, and denied having any conversation with Bascom Kellett or Harry Warren concerning the same. He said he was not with his brother, Fred, or Bunk Sandridge on Saturday night, February 5, 1927, but was at home that night. . In the statement that he was at home that night, "all night," he was corroborated by his mother, Mrs. Charles Cantrell. She also said that Bascom Kellett told her that he found the stolen chickens "at Newt's."

Fred Cantrell and Bunk Sandridge both testified that they had never stolen any chickens from Mrs. Kellett and that appellant was not with them on the night of February 5, 1927. They further testified that Bunk Sandridge and his wife spent that night in the home of Fred Cantrell; that they played "pitch" until midnight, and then went to bed. Mrs. Fred Cantrell and Mrs. Bunk Sandridge testified to the same effect, as to where their husbands were and what they were doing on the night of February 5th. On cross-examination, Fred Cantrell admitted that he had been convicted for assaulting his father and grandfather, and that his punishment therefor was "two years parole."

Newt Cantrell said Bascom Kellett came to his place and claimed that his mother's stolen chickens were there, but, when his mother looked at the chickens, she told him they were not hers.

In rebuttal for the State, several witnesses testified that both Fred Cantrell and Bunk Sandridge had bad reputations in the community, for truth and veracity and "moral honesty."

Appellant has filed no brief, and we must, therefore, look to his motion for a new trial for the errors complained of.

I. The sole question for our consideration, on the record before us, is the sufficiency of the evidence. If it is true that appellant, at

252

first, protested against the stealing of his Aunt Alice's chickens, it is unfortunate that he did not stick to that good impulse and refuse to participate in such an affair. If he aided and abetted in carrying the chickens to the car and in taking them away from his aunt's premises, he is as guilty of the offense charged as his companions, who entered the premises and took the chickens from their roost, even though he was "coaxed into the deal." [Sec. 3687, R. S. 1919.] The testimony of Mrs. Kellett and her son, Bascom, shows that all of her chickens roosted in the shed every night, and that she kept the door on the shed closed at all times. She missed her six white hens and one red hen on one Sunday afternoon in the early part of February, and had seen them a day or two before, when they were counted. These facts, not only support the theory that the chickens were stolen from their roost on the night before they were missed, but correspond with and are corroborative of the facts related by appellant in his confessions to Bascom Kellett and Harry Warren that, on Saturday night, February 5th, Fred Cantrell and Bunk Sandridge went to the shed and took these chickens from their roost, while he (appellant) waited for them near the car and helped them in carrying the chickens to the car; and that they ate the red hen, after she was smothered to death in the sack, and turned loose the six white hens at Bunk Sandridge's home. It was developed on the cross-examination of Mrs. Kellett by appellant's counsel that Newt Cantrell told her that her missing chickens were at "Bunk Sandridge's." This is another fact or circumstance in support of the theory of theft, and in corroboration of appellant's confessions, as to where the chickens were taken. And it should be noted that appellant's confessions were voluntary, and that they were made to two different persons at different times and under different circumstances, one being before his arrest, and the other after his arrest on this charge. This court was confronted with a similar situation in the case of State v. Skibiski, 245 Mo. 459, 463, 150 S. W. 1038, and, in discussing the sufficiency of the evidence in that case, the court said:

"The rule in this State has long been that full proof of the *corpus delicti*, independent of the confession, is not required. If there is evidence of corroborating circumstances which tend to prove the *corpus delicti* and correspond with circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. [State v. Patterson, 73 Mo. 1. c. 712, 713; State v. Coats, 174 Mo. 1. c. 417; State v. Wooley, 215 Mo. 1. c. 672; State v. Knowles, 185 Mo. 1. c. 176, 177; State v. Henderson, 186 Mo. 1. c. 484; State v. Young, 237 Mo. 170.] A like, or even more liberal, rule pre-

vails in other jurisdictions. [Sullivan v. State, 58 Neb. 796; Bergen v. People, 17 Ill. 426; Ryan v. State, 100 Ala. 94; State v. Westcott, 130 Iowa, 1; People v. Jones, 123 Cal. 65; People v. Jaehne, 103 N. Y. 182; People v. Brasch, 193 N. Y. 46.]''

Applying this rule to the facts in this case, we think the proof of the *corpus delicti* was sufficient to make the confessions admissible, and that it was for the jury to say whether the corroborating facts and the confessions, considered together, excluded from their minds all reasonable doubt of appellant's guilt, considering also his denial of the charge, his repudiation of the confessions, and the evidence, in his behalf, tending to show an *alibi*. [See also, State v. Morro, 281 S. W. 720.] It is elementary that the jury weigh the evidence and pass upon the credibility of the witnesses. Obviously the jury believed the testimony of the State's witnesses, and where, as in this case, there is substantial evidence to support their verdict, it is not the province of this court to interfere. It follows that the demurrer to the evidence was properly overruled. [Sec. 3314, R. S. 1919; State v. Crawford, 289 S. W. 961; State v. Standifer, 289 S. W. 856; State v. Baker, 264 Mo. 339, 175 S. W. 64; State v. Walls, 262 Mo. 105, 170 S. W. 1112; State v. Estes, 209 Mo. 288, 107 S. W. 1059.]

II. The motion for a new trial contains only general assignments of error as to the admission and exclusion of evidence and as to given and refused instructions. Assignments of this character are not proper subjects for review on appeal. [New Sec. 4079, Laws 1925, p. 198; State v. Murrell, 289 S. W. 859; State v. Standifer, 289 S. W. 856.]

III. The trial court is charged with error "in allowing the jury to separate without the consent of defendant or his attorney." We find nothing in the record to support this charge, and, for that reason, it will be disregarded. Mere assertions in a motion for a new trial do not prove themselves. [State v. Pinkard, 300 S. W. 748; State v. Baird, 297 Mo. 219, 248 S. W. 596; State v. Creeley, 254 Mo. 382, 162 S. W. 737.]

The indictment and the verdict are in approved form. Finding no error in the record, the judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.