THE STATE v. LEONARD SHORT, Appellant.—87 S. W. (2d) 1031.

Division Two, November 5, 1935.

1062

*Sam M. Wear, F. H. McLaughlin* and *Fred Stewart* for appellant.

*Roy McKittrick*, Attorney General, *James L. HornBostel*, Assistant Attorney General, and *Nat W. Benton* for respondent.

WESTHUES, C.—Appellant was charged, by an information filed in the Circuit Court of Greene County, Missouri, with the crime of being an accessory before the fact to a robbery in the first degree, alleged to have been committed by means of a dangerous and deadly weapon.

Upon a trial appellant was convicted. The jury assessed the minimum punishment prescribed for the offense, that is, ten years' imprisonment in the penitentiary. The trial court, at the time of pronouncing sentence, assessed an additional two years' imprisonment.

Appellant has not favored us with a brief. In his motion for new trial it was alleged that the evidence was insufficient to sustain the charge. Ben J. Harrison owned a number of grocery stores in the city of Springfield. Every evening the cash taken in at the various stores was delivered to the Model Bakery, Harrison's headquarters, and the morning following, at about nine o'clock, an employee of Harrison would take the cash to a bank for deposit. On October 18, 1933, the perpetrators of the robbery displayed weapons and forced the employee carrying the cash to enter a car. The messenger was forced to lie upon the floor of the car and was taken into a distant part of the city where he was relieved of about $1300 in cash, then released. Joe Morgan, self-confessed perpetrator of the robbery, and Frank Simmons, an accomplice, testified for the State. Morgan had served a number of terms in various penitentiaries and at the time of the trial was serving a twenty-year sentence in the Missouri penitentiary on a first-degree robbery charge. Morgan testified that he located in Springfield for the express purpose of making a living by perpetrating robberies. He confessed, while on the witness stand, of having committed five or six such crimes during the months of August, September and October, 1933. He detailed the circumstances of how he met appellant Short through one Dewey Gilmore. Gilmore also had a criminal record. [See State v. Gilmore, 336 Mo. 784, 81 S. W. (2d) 431.] He also testified at length how Short planned the robbery here in question. Morgan and Simmons both testified that Short informed them that he knew the manner in which the money was being handled by Harrison; that Short suggested that they look over the ground adjacent to the Model Bakery to acquaint themselves with the situation. Short was a wrestling promotor and Harrison was the secretary of the Athletic Commission. Short often visited Harrison's offices at the Model Bakery and transacted business with him in connection with athletic exhibitions. Appellant at various times obtained passes from Harrison for admission to wrestling and boxing bouts. This coincides with evidence, given by Morgan and Simmons, that Short informed them he knew the details of how the money was handled at the Model Bakery. Simmons testified that Short gave him, and others who were connected with the conspiracy, passes to wrestling bouts. A

number of these conspirators were seen in attendance at these bouts. Simmons and Morgan testified that Gilmore, Louis Cook and Homer Hiett were also connected with the conspiracy to rob the Model Bakery; that the plans were first discussed in the month of August, 1933, but due to the fact that on a number of occasions certain members of the conspiracy were lodged in jail in connection with other crimes the robbery was postponed. The final plan, alleged to have been arranged by appellant, was, that Morgan and Cook were to drive one car and Simmons and Hiett another; that they were to be at the Model Bakery about nine o'clock and keep a lookout for the messenger with the money; that the messenger was to be picked up, placed in the car and relieved of the money. This plan was consummated on the morning of October 18, 1933. A police officer, Frank Pike, testified that shortly after the crime was reported he saw appellant, Simmons and Hiett together in a car. There was also evidence that Morgan and Short had planned to prevent a number of the conspirators from participating in the spoils. There are other facts in the record which tend to establish the guilt of appellant. In our opinion the facts related are sufficient to sustain the conviction.

■ It is settled law that a defendant may be convicted on the uncorroborated testimony of an accomplice. In this case, however, there were many facts and circumstances which corroborated the evidence given by two accomplices who testified against appellant. Witnesses, not connected with the crime, had observed appellant in company with the various conspirators at certain points in the city, which evidence corresponded with that of the accomplices Morgan and Simmons.

■ Appellant offered evidence, by a number of witnesses, tending to show that Morgan, the confessed perpetrator of the crime, was not in Springfield at the time the crime was committed. It was appellant's theory that Morgan and Simmons, to use his expression, had "framed him" and that they were testifying against him in the hope of receiving lighter sentences for this and other crimes of which they had been guilty. The State, having introduced substantial evidence in support of the charge, and the defendant substantial evidence of his innocence, it became a question for the jury. We are not authorized to disturb their finding. We may say in passing, that from the record we are of the opinion that the jury was justified in finding appellant guilty under the evidence.

■ Appellant, in his motion for new trial, contended that the trial court erred in permitting the prosecuting attorney to cross-examine him upon a subject beyond the scope of the examination in chief. The particular matter referred to was, that appellant was asked to whom he had talked at the Gabriel Cafe on the morning of the robbery. Appellant had in minute detail explained his where-

abouts on that morning and had mentioned the Gabriel Cafe. It is, therefore, apparent that the cross-examination was proper.

■ Error was assigned because the trial court permitted the State to introduce evidence of statements, made by the conspirators, prior to the time the crime was committed. Appellant was not present when these statements were made. Such statements have been held to be admissible on the theory that where a conspiracy exists the statements of any member of the conspiracy may be shown against the others. [State v. Stogsdill, 324 Mo. 105, 23 S. W. (2d) 22, 1. c. 31 (25, 26); State v. Peak, 68 S. W. (2d) 701; 16 C. J. 644, sec. 1283.] The testimony referred to was given by the wife of Frank Simmons. In the motion for new trial it was alleged that she was not a competent witness because a wife of a conspirator. No such contention was made during the trial and, therefore, there was no adverse ruling, by the court, of which appellant can complain.

■ Appellant also complains, in his motion for new trial, that Joe Morgan was permitted to testify to the commission of other robberies in which appellant was alleged to have been a participant. The record discloses that this testimony was elicited from Morgan on cross-examination at the insistence of appellant's counsel and over the objection of the witness, Morgan. Note the following on cross-examination:

"Q. Now, tell the jury if you will the different robberies you have committed. You have given us the Gold robbery and one of the Model groceries. You have given us the Davis Grocery Company, you have given us the Landers Theatre and you have given us the Gold Brothers. Where is that? A. It is right across from the Missouri Trust Company.

"Q. What other robberies, Mr. Morgan? A. I don't believe that has anything to do with this case.

"By the Court: Go ahead and answer his question.

"A. My memory is awful bad too.

"By Mr. Wear: Q. Tell the jury, if you will please, what other robberies you have committed here? A. Model Baking Company.

"Q. All right. What else? A. That is about all I can remember."

Later in the cross-examination we find:

"Q. But you was the first one that suggested it. These various robberies you have told about, did you commit them by yourself? A. No, sir.

"Q. Who helped you? A. I don't believe that has any bearing on the case.

"Q. Would you mind telling the jury? Let the Court pass on that. A. It will bring somebody else in that hasn't anything to do with this case.

"Q. Who helped you commit those robberies? Go ahead, Mr.

Moreno, and tell us, please, Mr. Morgan? A. I don't believe that has any bearing on this case.

"Q. You refuse to answer that question? A. Yes, sir.

"Q. Mr. Short didn't help you do it did he? A. Some of them.

"Q. Didn't help you do any of them did he? A. Didn't help me as an actual perpetrator of them.

"Q. And didn't hire you to commit any of those robberies? A. Hired me on that Model Bakery.

"Q. And that was all? A. Suggested some of the others.

"Q. Which ones did he suggest? A. Suggested the Galena—

"Q. You haven't mentioned the Galena robbery before have you? A. I wasn't in on it. I was left out."

The purpose of this cross-examination evidently was to show the jury that the witness was a confessed criminal and was not to be believed. Appellant, however, cannot complain of evidence brought into the case at his own insistence. We note in the record that after the above cross-examination the attorney for the State questioned the witness upon the same subject matter. The trial court, however, promptly sustained appellant's objection thereto. It is evident that the record presents no error in this regard.

█ Complaint is made because the prosecuting attorney was permitted to endorse the name of one witness on the information during the trial. This witness testified over the objection of appellant. A week prior to the trial attorney for appellant filed a motion asking that the names of all witnesses be endorsed upon the information. The prosecuting attorney complied with this request. However, he stated in open court that he obtained the information with reference to this witness only a few minutes before he asked leave to endorse his name on the information. The record discloses that the evidence of this witness was cumulative, and in our opinion unimportant in view of the other evidence of the same character. This witness testified that he had observed appellant in company with Simmons and Morgan about nine days prior to the robbery. Simmons and Morgan had also testified that they had been in company with appellant at the time and place as mentioned by the witness. The trial court did not abuse its discretion in permitting the name of the witness to be endorsed on the information and in permitting him to testify. The defense offered evidence to rebut the evidence of this witness. The State had introduced other evidence to prove the same fact. We cannot conceive how appellant was prejudiced by the action of the trial court. The point is, therefore, ruled against him. [State v. Lowry, 321 Mo. 870, 12 S. W. (2d) 469, l. c. 473 (4, 5).]

█ Error was assigned because the trial court refused a peremptory challenge of a juror, who was alleged to have been a first cousin of the prosecuting witness. A statement in the closing argument of the prosecuting attorney was also made the basis of an

assignment of error. The record does not disclose any ruling adverse to appellant with reference to either assignment. Assignments in a motion for new trial are of no avail unless the record supports them. In the bill of exceptions we do not find any reference to challenges of jurors. As to the argument of the prosecuting attorney complained of, the record shows that the trial court sustained appellant's objection and admonished the jury to disregard the statement.

■ The verdict, appearing in the record proper, reads as follows:

"We, the jury, find the defendant Leonard Short, guilty as charged in the information, and we assess his punishment at 10 (ten) years."

Appellant contends that the verdict is insufficient. The minimum punishment prescribed for the offense of which appellant was found guilty is ten years' imprisonment in the penitentiary. The verdict clearly indicates that the jury found appellant guilty as charged and intended to assess the minimum punishment. The verdict was sufficient to support the sentence and judgment.

■ The record also reveals that after the motion for new trial was overruled the trial court sentenced appellant to serve twelve years' imprisonment in the penitentiary. The two years, in addition to the ten years assessed by the jury, were added by the trial court. The only authority found in the statute for the action of the court is Section 4428, Revised Statutes 1929 (Mo. Stat. Ann., p. 3043). The question of the trial court's authority to assess an additional punishment, by virtue of Section 4428, supra, in a case where a defendant is charged and convicted of first degree robbery by means of a deadly and dangerous weapon, was fully considered in the case of State v. Virgil Harris, 337 Mo. 1052, 87 S. W. (2d) 1026. It was there held that the trial court was without authority to assess the additional punishment, for the reason that Section 4061, Revised Statutes 1929 (Mo. Stat. Ann., p. 2863), controlled with regard to the punishment to be assessed in such cases. It was held that the Legislature had, by express mandate, increased the minimum punishment in such cases five years over and above the minimum punishment prescribed for first degree robbery when committed without the use of a dangerous and deadly weapon. We will not again discuss the question, but content ourselves with adhering to the ruling in the Harris case.

Therefore, in this as in the Harris case, we are, by virtue of Section 3765, Revised Statutes 1929 (Mo. Stat. Ann., p. 3304), correcting the sentence imposed by the trial court. It is ordered and adjudged that the defendant, Leonard Short, be confined in the penitentiary of this State for a term of ten years and that a commitment be issued for him, directed to the proper officer, who shall with all convenient speed convey said defendant to the State penitentiary

of the State of Missouri and deliver him to the warden thereof, there to be imprisoned for a period of ten years, or until he be otherwise discharged by due course of law; and that a copy of this order be transmitted to the warden of the State penitentiary. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.