STATE of Missouri, Respondent,

v.

Sammy Aire TUCKER, Appellant.

No. 49105.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1962.

Rehearing Denied Dec. 11, 1962.

Charles M. Shaw, L. L. Bornschein, Clayton, for appellant.

Thomas F. Eagleton, Atty. Gen., Howard L. McFadden, Asst. Atty. Gen., Jefferson City, for respondent.

WESTHUES, Chief Justice.

Defendant Sammy Aire Tucker was by amended information charged with murder in the first degree. The information further alleged that Tucker had previously been convicted on a charge of robbery in the first degree. Sec. 556.280 as amended Laws 1959, V.A.M.S. A trial by jury in the Circuit Court of Cape Girardeau County, Missouri, resulted in a verdict of guilty as charged. The trial court heard evidence on the question of a previous conviction and found that defendant had been so convicted in the State of California in January, 1961. The court fixed Tucker's punishment at death. A motion for new trial was filed and overruled. From the judgment entered, an appeal was taken to this court.

The offense was alleged to have been committed in the County of Cape Girardeau on March 10, 1961. The victim was Donald Crittendon, a police officer of the City of Cape Girardeau, Missouri.

Tucker did not file a brief in this court. An attorney of defendant's own choosing defended him at the trial and filed a lengthy motion for new trial and a notice of appeal. Tucker was granted leave to appeal as a poor person.

Since no brief was filed on defendant's behalf, it becomes the duty of this court to consider all points properly preserved by the motion for new trial. State v. Vincent, Mo., 321 S.W.2d 439. In this motion, the following points were preserved for review: In point 1, defendant assigns five separate reasons to sustain his contention that the court erred in overruling his motion for a continuance.

In point 2, defendant says the court erred in overruling his objection to the panel of

531

**511**

jurors; that of the 93 on the panel only 3 were of the female sex; that of the 56 jurors summoned on voir dire, 36 were residents of the town of Cape Girardeau.

In point 3, it is stated that the defendant was brought to the courtroom handcuffed and shackled in chains in the presence of the jury panel and that police were present in the courtroom with weapons exposed.

In assignments 4, 5, 6, 7, 8, 9, and 15, defendant complains of rulings on the admission and rejection of evidence.

In assignments 14 and 16, defendant says the trial court erred in not instructing on "aiding and abetting" and on the offense of manslaughter.

Finally, in assignment 17, defendant says the trial court should have directed a verdict of not guilty.

The evidence on the part of the State and the defendant conflicted only on a few points. The following is what the evidence shows to have occurred: On the night of March 10, 1961, at about 9:30 o'clock, two men were seen loitering about the premises of the Town Plaza Shopping Center located west of Cape Girardeau, Missouri, near Highway 61. It was closing time for the stores. Police were notified. One of the men (who was "loitering") was seen to enter a car. When the police arrived, a car thought to have been the same car as the one entered by one of the two above-mentioned men was pointed out to the police. This car was being driven north on Highway 61. Donald Crittendon, in a police car, and other police officers in another car followed the car as it went north on Highway 61. The police proceeded with red lights flashing and sirens sounding. After a short chase, the car being followed by the police stopped on the side of Highway 61. Crittendon stopped his car to the rear of the pursued car, got out of his car, and walked up to the car ahead. The occupants of such car proved to be the defendant and one Thompson. The other police car, meanwhile, had stopped on the

opposite side of the highway. Crittendon asked the defendant, who was in the driver's seat, for his driver's license. After an exchange of a few words, Crittendon asked the defendant to get out of the car. As the defendant was in the act of getting out, Crittendon was shot by one of the occupants of the car. Other shots followed, with the defendant receiving a number of bullet wounds and officers other than Crittendon were also wounded. Defendant and Thompson then left in their car. Crittendon was taken to a hospital where he died on March 21, 1961, as a result of a gunshot wound suffered at the point heretofore described. Defendant and Thompson were later arrested.

Defendant, testifying in his own defense, admitted that the police officers were in uniform and that he knew Crittendon and the other officers present were police officers. In his evidence, defendant made no claim that the police officers drew guns or in any way made any demonstration to harm him or Thompson prior to the time that Crittendon was shot. Defendant testified that he did not shoot Crittendon but that as he was getting out of the car, Thompson reached over and shot Crittendon and then threw the gun to him, the defendant, but that he did not, in fact, use the gun.

There was positive evidence introduced by the State that it was the defendant and not Thompson who shot Crittendon. Shannon Kelly, a police officer, testified he was across the highway only 20 feet from where Crittendon was talking to the defendant. Note his evidence as to what occurred:

"Q (By Mr. Strom) Mr. Crittendon said something?

"A Yes.

"Q What happened?

"A The driver immediately sort of backed out of the car and the minute he came out of the car he thrust his

hand then. Your—on your Oldsmobile car you have—on the '55 or '56 model you have a wrap-around windshield. Between the windshield and door he immediately thrust his hand out there and shot the officer in the stomach.

"Q   What did Crittendon do as the driver of the vehicle got out?

"A   He backed north of the door because the door came open between them.

"Q   Which direction was Crittendon facing as he backed north?

"A   He was facing south.

"Q   Now you say the man reached over this place in the door and what happened at that point?

"A   That is when he shot the officer standing there.

"Q   Did you see the shot fired?

"A   Yes, sir.

"Q   How far away were you at that point?

"A   Just across the highway.

"Q   About how wide is that highway?

"A   Twenty feet.

"Q   Did you observe the driver of that Oldsmobile?

"A   Yes, sir.

"Q   Would you recognize him again?

"A   Yes, sir.

"Q   Is he here in the courtroom?

"A   Yes.

"Q   Where is he?

"A   That is the gentleman sitting there (indicating).

"MR. STROM: Let the record show that the witness has pointed to the defendant."

Robert F. Ross, an auxiliary police officer, testified that he was with officer Kelly at the time of the shooting. Note his evidence as to whether defendant shot Crittendon:

"Q   You say the driver handed Crittendon a pink piece of paper. When did that happen?

"A   After Officer Crittendon walked to the door he asked the man something and then there was a pink piece of paper handed out of the—the glass was down and he handed a pink piece of paper out to Officer Crittendon and he —Officer Crittendon looked at the pink piece of paper and he said something again and the door opened.

"Q   What happened when the door opened?

"A   When the door opened, the man on the driver's side stepped out and placed one foot on the ground between the door and the car, and in the opening part he stuck his arm over there and placed the weapon down to Officer Crittendon's stomach and fired."

Defendant admitted that he was the driver of the car heretofore mentioned in the quoted portion.

The State introduced further evidence that the defendant, previous to the trial, voluntarily admitted that he shot Crittendon.

It may be well at this point, having just reviewed the evidence, to dispose of points 14, 16, and 17. We rule that there was positive evidence to support a finding that the shooting of officer Crittendon by the defendant was unjustified and without any provocation or excuse. In fact, defendant did not contend otherwise at the trial. He simply denied the shooting and claimed Thompson was the guilty party. The State's evidence was ample to support a finding that it was the defendant who fired the fatal shot. So, the trial court did not err in overruling defendant's motion for a verdict of not guilty.

There is no merit to points 14 and 16. A reading of the evidence, the substance of which we have stated supra, demonstrates that no instruction on manslaughter or aiding and abetting was required.

Defendant contends that the trial court should have granted a continuance. The original information was filed on March 28, 1961. An amended information was filed on April 20, 1961. On April 12, the trial court appointed two attorneys to defend Tucker. These attorneys, with leave of court, withdrew from the case. On May 1, 1961, Charles M. Shaw entered his appearance as attorney for the defendant. On June 9, 1961, defendant filed a motion for continuance to the September term of court. On June 19, Leonard Bornschein appeared as counsel for defendant on behalf of Mr. Shaw. The motion for continuance was overruled and the cause was "continued on setting for June 26." The sheriff was ordered to call "all jurors and alternates and an additional fifty persons for jury duty." On June 26, an application was filed to disqualify the regular judge, the Honorable W. Osler Statler. This application was sustained and the cause was set for trial for July 10, 1961. By order of the Supreme Court, the Honorable Ray Weightman, Judge of the Fourth Judicial Circuit, was designated to try the case. On July 17, 1961, Judge Weightman, presiding, the case was called for trial. The record shows that the State and the defendant answered ready for trial. The case was tried before the court and a jury on July 17 and 18 and a verdict of the jury was received by the court on July 18, 1961.

It may be noted that the defendant did, in fact, obtain a continuance by reason of delays and the disqualification of the regular judge. Furthermore, the record shows that no request was made for further continuance after Judge Weightman was designated to try the case. As above mentioned, both the State and the defendant answered ready for trial on July 17. In the circumstances, the defendant's contention that the court erred in overruling the motion for continuance is without merit.

Defendant's complaints in assignments 2 and 3 have no support in the record. No objection was made to the panel of jurors called for the trial for July 17. The record does not show the number of jurors summoned from the various townships nor does the record show the number of male or female jurors. So, also, with the complaint that the defendant was taken to the court handcuffed and that the police officers were present in court with weapons exposed. The record does not show these facts and the record does not show the subject to have been mentioned by counsel for the defendant. Allegations in a motion for a new trial, to have merit, must be supported by the record. They do not prove themselves. State v. Short, 337 Mo. 1061, 87 S.W.2d 1031, 1. c. 1034(9–11); State v. Cantrell, 320 Mo. 248, 6 S.W.2d 839, 1. c. 841(6).

Assignments numbered 4 to 9 inclusive and 15, in the motion for new trial, must be considered in a group. A number of them standing alone do not present any question for review and some are duplications. In assignment 4, defendant complains that a witness was permitted to testify that State's Exhibit 2 was a photograph of Thompson and that the witness had seen Thompson at the Shopping Center. Defendant says that such evidence tended to show defendant guilty of an offense for which he was not on trial. What offense, defendant did not say. We do not find that the evidence indicated or tended to show any other offense to have been committed. Defendant admitted being with Thompson. In fact, he testified that Thompson did the shooting. The complaint in assignment 15 pertains to the documents which were certified copies of papers showing a prior conviction. Complaint is made that the documents did not prove that the defendant was the same person as the one shown to have been convicted. Defendant, while testifying at the trial, admitted that he committed the prior offense and that he was the per-

son described in the documents. It is apparent that there is no merit in defendant's contention.

In assignment 5, defendant says the court erred in permitting the prosecutor to cross-examine defendant on matters not covered on direct examination. Defendant testified at length and detailed the circumstances of the shooting. We have not found wherein the prosecutor violated the rule and defendant did not point out wherein the cross-examination went beyond the scope of the direct examination. The point is ruled against the defendant.

■ In points 6, 7, and 8, defendant complains that the State was permitted to introduce evidence in rebuttal which was, in fact, evidence in chief. Defendant testified he did not shoot Crittendon; that it was Thompson; further, that Thompson threw a gun to the defendant but that he did not use it. The State, in rebuttal, offered evidence that the defendant made statements before the trial that he did shoot Crittendon. This was proper rebuttal. Complaint is made that this evidence should not have been admitted because defendant was threatened and beaten. Police officers testified that the statements were made after defendant had been advised of his rights and that Tucker was not mistreated in any way and no promises or threats were made. The question of whether the statements made by the defendant were voluntarily made was submitted to the jury. No complaint was made that the instruction was improper. There was no error in admitting the evidence in rebuttal.

■ In assignment 9, defendant contends that the trial court should have held an interlocutory hearing outside the presence of the jury on the question of the admissibility of the defendant's incriminating statements. This was not mandatory. The defendant at the trial did not object to the procedure nor did he ask that the matter should first be heard out of the presence of the jury. State v. Malone, Mo., 301 S.W.2d

750, l. c. 758(22); State v. Holliday, 353 Mo. 397, 182 S.W.2d 553, l. c. 554(4).

Assignments 10 to 13 inclusive do not present any question for review.

We have examined and considered all points preserved in the motion for new trial and find no ruling prejudicial to the rights of the defendant. We have also examined all matters required by Supreme Court Rule 28.02, V.A.M.R. and find no error therein.

The judgment of the trial court is hereby affirmed.

The date of defendant's execution is hereby set for Wednesday, January 9, 1963.

All concur.

### On Motion for Rehearing

PER CURIAM.

■ Appellant did not file a brief when this case was submitted. In our opinion, we reviewed all of the assignments of error contained in the motion for a new trial as well as all matters required to be reviewed under Supreme Court Rule 28.02, V.A.M.R. Appellant has filed a motion for rehearing wherein he has only one complaint to make. He claims that the evidence of a previous conviction was insufficient for the application of the second offense statute, Sec. 556.280, V.A.M.S.

It is claimed that the information did not allege "nor (was) evidence adduced in support thereof, that such sentence was complied with, either by pardon, parole or compliance therewith: * * *." In so contending, appellant has overlooked the fact that the statute, Sec. 556.280, supra, was amended by the legislature in 1959. See Cumulative Annual Pocket Part, Vol. 40, V.A.M.S., p. 10. The statute, on the point in question, as amended reads as follows: "If any person convicted of any offense punishable by imprisonment in the penitentiary, or of any attempt to commit an offense which, if perpetrated, would be pun-

ishable by imprisonment in the penitentiary, shall be sentenced and subsequently placed on probation, paroled, fined or imprisoned therefor, and is charged with having thereafter comitted a felony, he shall be tried and if convicted punished as follows: * * *."

The record in this case showed that the defendant Tucker had previously been convicted of robbery, sentenced, and imprisoned. That is all the section of the law requires.

The motion for rehearing is overruled.