In the Matter of Sammy Aire TUCKER.
No. 875.

United States District Court
W. D. Missouri,
Central Division.
Feb. 18, 1963.

**203**

Thomas Eagleton, St. Louis, Mo., and Howard L. McFadden, for respondent.

GIBSON, Chief Judge.

Petitioner files for writ of habeas corpus directed against E. V. Nash, Warden of Missouri State Penitentiary at Jefferson City, Missouri. Petitioner was convicted in the Circuit Court of Cape Girardeau County of murder in the first degree in a trial charging said offense and under the Habitual Criminal Act of Missouri, § 556.280 RSMo 1959, V.A. M.S. Upon a finding of guilty by the jury, the judge, acting under the provisions of the Habitual Criminal Act, sentenced petitioner to death. His conviction was appealed by petitioner to the Supreme Court of Missouri which Court en banc affirmed the judgment and sentence of the Circuit Court on November 14, 1962. State v. Tucker, 362 S.W.2d 509. Petition for rehearing was filed and overruled on December 11, 1962. The date of execution was originally set for January 9, 1963. A stay was issued by the Governor of Missouri until February 6, 1963. This petition for writ of habeas corpus was filed February 4, 1963 and this Court issued a stay of execution pending the disposition of the petitioner's application by this Court.

This Court issued a show cause order. A full and complete hearing was held on the issues raised by the petitioner at a hearing in the Central Division of this Court at Jefferson City on February 11, 1963.

The petitioner had not exhausted his legal remedies in the state courts nor had he applied for certiorari to the United States Supreme Court from the decision rendered by the Supreme Court of Missouri. Neither had petitioner availed himself of the post conviction remedies afforded by Rule 27.26 of the Missouri Supreme Court Rules, V.A.M.R., which in effect and substance carries the same phraseology and remedies as set forth in § 2255, Title 28 United States Code. However, in view of the fact that petitioner was under an immediate death sentence, this Court assumed jurisdic-

Leonard Bornschein and Charles Shaw, Clayton, Mo., for petitioner.

tion of the petition as petitioner then did not have sufficient time remaining to pursue his available remedies. United States ex rel. Devita v. McCorkle, 216 F.2d 743 (3d Cir., 1954). Thomas v. Teets, 205 F.2d 236 (9th Cir., 1953).

The points and contentions raised by the petitioner are as follows:

1. That petitioner was taken to the courtroom for trial in the presence of the entire jury panel handcuffed and shackled in chains;

2. That the sheriff and other police officers were present inside the bar of the courtroom with exposed weapons during the entire trial;

3. That 36 of the 56 jurors summoned on voir dire were residents of the city of Cape Girardeau, the site of the alleged crime, that the jury was handpicked and not summoned in accordance with law;

4. That § 556.280 V.A.M.S. (Amended Laws 1959), referred to as the Habitual Criminal Act is unconstitutional, since that without a declaration and proof of compliance such as discharge, pardon, parole, commutation of sentence, or release there is not a final adjudication of an alleged prior conviction;

5. That said information did not allege that the prior conviction of petitioner was not appealed from nor affirmed or appeal dismissed as required by aforesaid § 556.280 and that the trial court was without jurisdiction to impose sentence.

Petitioner alleges all of the above acts and allegations to be violative of the Fifth and Fourteenth Amendments to the Constitution of the United States as denying him due process of law and a right to a fair and impartial trial.

The response to the show cause order filed by the state of Missouri raises the issue of whether petitioner is entitled to pursue this present application for writ of habeas corpus, as he has not exhausted his state remedies nor applied for and been denied certiorari by the United States Supreme Court. This contention was ruled upon adversely to the State on the basis of the exigencies of petitioner's death sentence which was set for February 6, 1963. The other parts of the State's response traverse the specific allegations contained in petitioner's application for the writ.

After the hearing on the petition for writ of habeas corpus, the Court found that the allegations contained in the petition were not sustained by the evidence or that the allegations raised questions of law that were solely within the jurisdiction of an appeal proceeding through the state courts and were not reviewable by this Court. The allegations contained in the petition are considered in detail in the same order as they are listed in the petition. Before discussing the petitioner's allegations, the factual situation should be briefly summarized. The petitioner, Sammy Aire Tucker, was by amended information charged with murder in the first degree, which information also alleged that Tucker had previously been convicted of robbery in the first degree. The trial by jury in the Circuit Court of Cape Girardeau, Missouri, resulted in a verdict of guilty as charged. The trial court heard evidence on the question of a previous conviction and found that petitioner had been so convicted in the state of California in January 1961. The Court fixed Tucker's punishment at death. The information filed alleged an offense of murder of a police officer in the city of Cape Girardeau, Missouri, on March 10, 1961. The opinion of the Supreme Court of Missouri in this case ably summarizes the evidence, and, in the interest of brevity, will not be repeated here. Suffice it to say, that the petitioner was driving a car North on Highway 61. The police, after a short chase, stopped the car, and Crittendon, one of the police officers, got out of his car, walked up to the petitioner's car in which petitioner and one, Thompson, were riding. Another police car had stopped on the opposite side of the Highway. Crittendon asked petitioner for his driver's license and then asked petitioner to get out of the car. Crittendon had not threatened petitioner nor had he pulled out his gun. As the pe-

titioner was in the act of getting out, Crittendon was shot by one of the occupants of the car. The petitioner and Thompson then left in their car amid other shots. Crittendon subsequently died on March 21, 1961 as a result of the gunshot wound. The petitioner in testifying admitted the police officers were in uniform, that he knew they were police officers, and petitioner made no claim that the police officers drew guns or in any way made demonstrations to harm him or Thompson prior to the time Crittendon was shot. Petitioner contended that he did not shoot Crittendon but that as he was getting out of the car Thompson reached over and shot Crittendon and then threw the gun to him. There was direct evidence that petitioner was the one who shot Crittendon and on the physical facts it would be difficult to visualize that Thompson rather than petitioner shot Crittendon. In addition, there were eye witnesses to the shooting. There was other evidence during the trial that petitioner, previous to trial, admitted that he shot Crittendon.

■ The above recital of facts is for information purposes only as it is not the province nor the function of this Court to act as an appeals court from any state court.

The contentions of the petitioner in claiming denial of a right to a fair and impartial trial and a denial of due process of law under the Fifth and Fourteenth Amendments to the Constitution of the United States are considered in the order set forth in the petitioner's application.

■ 1. The evidence adduced at the hearing established that the petitioner was brought from the county jail at Jackson, Missouri, to the Circuit Court House located in the same city, handcuffed with the handcuffs attached to a chain which was placed around his midriff in the same area as a belt would be placed. On the first day of the trial the chain and handcuffs were removed in an ante-room to the main courtroom, through which the jury or voir dire panel could possibly have seen the petitioner through the upper part of the door, which was glass. In the other trips to the court house the handcuffs and chain were apparently removed out of the view of the trial jury. The petitioner had previously escaped from a San Luis Obispo, California, institution. Petitioner, of course, was being tried on a charge of wanton murder. These facts, of themselves, would make it the duty of the sheriff to take proper precautions for the care and custody of petitioner. It did not appear that the petitioner was manacled at all while he was being tried. The precautions taken by the sheriff and other peace officers in connection with the custody of the petitioner appeared to be proper and in order under the circumstances then prevailing. It appears that the trial judge, Honorable Ray Weightman, was particularly careful concerning the decorum in the courtroom and in affording the petitioner the usual rights to a fair and impartial trial devoid of any degradative instances or situations that would act adversely to the petitioner's interests;

■ 2. The contention that the sheriff and other uniformed police officers were inside the bar of the courtroom, armed with exposed weapons, was not brought out in the evidence here presented. The sheriff and prosecuting attorney testified, as also did Judge Weightman that all of the officers in the courtroom wore coats and ties and that if they had any weapons, which they might well have had, the same were not exposed. In guarding an individual who is charged with murder in the first degree and who had a record of a prior escape from custody, it was incumbent upon the sheriff to see that petitioner did not escape during the trial of the cause since he was not handcuffed, manacled or shackled in any way while sitting at the counsel table during the course of his trial. The Court feels it is not within the best interest of comity amidst our dual system of jurisprudence to have the trial judge of a state

court testify in such a proceeding as this and to so call him to testify is an imposition upon him and is not in keeping with the proper procedure for determining constitutional issues raised nor in maintaining respect for both the state system of jurisprudence and the federal system;

3. The contention that 36 of the 56 jurors summoned on voir dire were from Cape Girardeau is of no substance. All of the objections for cause made against any of the individual members of the panel were allowed by the judge and no objection was made to the voir dire panel as a whole. The Court takes judicial notice that Cape Girardeau is the largest township in Cape Girardeau County and that in the normal course of events a large proportion of jurors on any random selection would come from there. The Constitution does not afford petitioner the right to a jury of his own choosing or a jury that would necessarily be sympathetic to his case. He is entitled to a panel that was picked at random or by some systematic selection to insure a fair cross section of the inhabitants of the county without the intentional and systematic exclusion of any class or group. Petitioner has made no showing whatever of any prejudice to him or denial of due process in the matter of jury selection. Any such points should be preserved in the record of the case and objection made at the trial or at least credible evidence presented at this hearing in support of such contention. None was so adduced;

4. The petitioner's contention that § 556.280 RSMo 1959 is unconstitutional is without merit. The Missouri statute itself has been held constitutional a number of times by the Supreme Court of Missouri, and such acts have been approved in principle on their constitutionality many times in the Federal Courts. A recent decision is Oliver v. United States, 290 F.2d 255 (8th Cir., 1961), cert. den. 368 U.S. 850, 82 S.Ct. 83, 7 L.Ed.2d 48 (1961). Any matters of insufficiency in the allegations in the information or failure of proof of the first offense are matters for direct review and of state procedural law which may not be considered or any remedy afforded by way of habeas corpus to this Court. Such are not violative of constitutional principles and as stated in Wolfe v. Nash, 313 F.2d 393 (8th Cir., 1963), the Court held that such matters are merely a local legal problem and of no national concern whatever. Said decision states in part "How and in what way proof of prior convictions shall be made under the State Habitual Criminal statute and what effect a deviation from the requirements of the statutes would have, we regard as purely a local problem and of no national concern whatever. The due process clause of the Fourteenth Amendment does not enable us to review errors of state law." Citing Buchalter v. N. Y., 319 U.S. 427, 431, 63 S.Ct. 1129, 87 L.Ed. 1492.

5. The allegation about infirmities in the information is dealt with in the consideration of point 4 raised by the petitioner and is fully covered and considered in dealing with that contention. The Court would have jurisdiction to impose the sentence on the petitioner.

Upon an overall review of all of the petitioner's contentions, the Court finds that the petitioner was afforded a fair and impartial trial conducted under the standards and safeguards that we commonly associate with the due process clause of the Fourteenth Amendment of the United States Constitution, and that petitioner's contention that he was deprived of constitutional rights as guaranteed to him by the Fifth and Fourteenth Amendments of the Constitution of the United States is not well founded and is without merit.

The petition for a writ of habeas corpus is denied, the petition is dismissed, and stay of execution heretofore issued is dissolved.

It is so ordered.