**STATE of Missouri, Respondent,**

**v.**

**Charles JONES, Appellant.**

**No. 50631.**

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Dale Reesman, Sp. Asst. Atty. Gen., Boonville, for respondent.

Crouch & Fitzgerald, Warrensburg, for appellant.

DALTON, Judge.

Defendant was charged and convicted under the Habitual Criminal Act of the offense of "forging an endorsement on a writing commonly relied upon in business and commercial transactions," to wit, a counter check, as hereinafter further described. The Court assessed defendant's punishment at five years' imprisonment in the Missouri State Penitentiary. Section 561.011 RSMo 1959, V.A.M.S. Defendant, being an indigent person, was represented in the trial and on this appeal by court-appointed counsel.

On January 28, 1964, the Court, out of the presence of the jury, heard evidence tending to show that defendant had previously been convicted of a felony, to wit, the offense of wilfully, unlawfully and feloniously *stealing a motor vehicle* in the State of Missouri, for which he was imprisoned in accordance with the judgment and sentence of two years in an institution designated by the Department of Corrections; however, he was only imprisoned from the 13th day of July, 1962, until the 1st day of February, 1963. The Court found the facts in accordance with the foregoing evidence and determined that the cause must be heard under the Habitual Criminal Act. Under this Act the jury determines the guilt of defendant and, if guilty, the Court assesses the punishment. Section 556.280 RSMo 1959, as amended Laws 1959, S.B. No. 117, V.A.M.S.

The State's evidence tended to show that on February 15, 1963, the defendant, a person about twenty-one years of age, resided at the DeVault Hotel in Warrensburg, Missouri; that on Friday, February 15, 1963, at about 11:30 a. m. defendant went to Nora's Bakery Shop, a business place owned and operated by Mrs. Nora Ginn in Warrensburg. Mrs. Ginn was not present at the particular time, but her employee, Mrs. Shirley Abbott, was in charge. Defendant purchased a dozen doughnuts from Mrs. Abbott and presented a check (State's Exhibit 3), as follows:

"Warrensburg, Mo. Feb. 14, 1963 No._____
Peoples National Bank
of Warrensburg, Mo.

Pay To The
Order Of _____ Clifford Racy _____ $ 19.50 _____
_____ nineteen dollars and fifty cents _____ Dollars

_____ James Brown _____ "

Defendant asked Mrs. Abbott if she could cash the check; she agreed, and asked defendant to endorse the check by writing his name, address and phone number on the back of the check. Defendant, thereupon wrote, "Clifford Racy 106 W. Culton 747-3427." Mrs. Abbott deducted the price of the doughnuts from the amount of the check and gave the balance in money to defendant.

Early in the afternoon on the same day, Mrs. Nora Ginn, the owner of the shop, learned of the presence of the check and called the telephone number defendant had written on the back of the check. She received no answer, but only a recording, and, thereupon, notified the police. Later, that afternoon or early evening Mrs. Ginn and Mrs. Abbott went to the county jail where Mrs. Abbott viewed four or five persons and identified defendant as the person who had given her the check and written the name "Clifford Racy" on the back of it. She also identified the defendant at the trial as the person who presented the check and made the mentioned endorsement. On the day following defendant's arrest, Mrs. Ginn presented the mentioned check at the Peoples National Bank of Warrensburg and received no money for it at any time.

The words "no account" were written across the face of the check by Mrs. Maxine Miller, a machine bookkeeper employed by the mentioned bank; she also wrote her initials on the check. At the time the check was presented to the bank for payment it had two endorsements, the last being the endorsement of Mrs. Nora Ginn. The check in question was what was commonly known as a counter check and was of the

type that is generally used and accepted in an ordinary commercial transaction in the community where the check was endorsed and passed.

Clifford Racy, a resident of Warrensburg, residing at the Martin Hotel, 106½ West Culton, testified that the endorsement on the back of the check in question was not his signature; that he did not write it; that he had not seen the check before; and that he did not know any "James Brown" whose name appeared as maker on the check, nor did he know the defendant. Mr. Racy further testified that he had lost his billfold on the 3rd or 4th of February, 1963. He first missed his billfold on the morning of February 4, 1963, but whether he had lost it the day before, or whether it was taken from his room, he didn't know. When it was located and returned to him his state driver's license was missing. The missing driver's license, however, was found on defendant's person when defendant was arrested by Sheriff William O. Fortney in Warrensburg on the evening of February 15, 1963. The missing driver's license bore an expiration date of 2/11/66 and Mr. Racy had promptly, after its loss, applied for and received a new driver's license. He identified State's Exhibit No. 4 as his missing driver's license.

The defendant offered no evidence.

At the close of the State's evidence the State asked and was permitted to amend its amended information, as filed on October 12, 1963, so as to conform to the proof, by alleging that defendant received the sum of $19.50 in property and money from the check. Defendant's motion for judgment of acquittal presented at the close of the State's evidence was overruled. The jury returned a verdict of guilty, as follows: "We, the jury, find the defendant guilty of forging an endorsement on a writing commonly relied upon in business and commercial transactions."

Appellant assigns error on the action of the Court "in failing to sustain the challenge for cause to juror Sidney Davis." Appellant insists that his (Davis') association with the complaining witness and the prosecuting attorney, and his prior connection with check offenses, rendered him incapable "as a matter of law, to be impartial in the trial of this case, and therefore defendant was deprived of a fair trial."

The record shows that Davis was asked whether he was acquainted with Mrs. Nora Ginn and he answered: "I am acquainted with Mrs. Ginn. Her son-in-law is employed at my place of business." Davis also said there was nothing about the acquaintanceship or relationship with her son-in-law that would cause him to be prejudiced for or against the defendant in this case. Subsequently, appellant's counsel inquired of the panel as to whether "any of you have had occasion to consult with him [prosecuting attorney], either in his capacity as prosecuting attorney or as a private attorney?" Mr. Davis answered, "I have." He was then asked if he had consulted the prosecuting attorney "on a criminal charge" and he answered "Yes." When asked the kind of a criminal matter, he said on a "bad check," not a forged check. When asked if he had ever been "a complaining witness in any criminal case in any state, in Missouri or any place," he answered that he had on both robbery and checks. When asked whether that would "tend to prejudice you against the defendant in this case" he answered, "I can't say that it would." See Johnson v. Missouri-Kansas-Texas R. Co., Mo.Sup., 374 S.W.2d 1, 2. Subsequently, counsel asked Davis if he had ever heard or read anything about this case and Mr. Davis indicated that he had, but that he had formed no opinion as to the guilt or innocence of this defendant at this particular time; and that he had not heard or read anything about the case that would preclude him, if chosen, "from giving [defendant] a fair and impartial verdict in the case." Defendant's counsel then challenged Davis for cause on the ground that he had "been a complaining witness, * * * on a check and has been a witness in crimi-

nal cases, check cases"; and that counsel felt that under the circumstances and in view of Davis' statements he could not be a fair and impartial juror. The challenge for cause was overruled and the defendant used one of his peremptory challenges to remove Davis from the list.

There is no contention here of any intentional concealment or any failure on the part of Davis to make a full disclosure of the matters inquired about on voir dire examination. Here the sole question presented is whether the facts disclosed by Davis disqualified him *as a matter of law* from being a qualified juror.

There is no contention here that Davis was disqualified by either § 494.010, as amended Laws 1959, S.B. No. 246, or by § 494.190 RSMo 1959, V.A.M.S.; however, these sections are not all inclusive. Barb v. Farmers Ins. Exchange, Mo.Sup., 281 S.W.2d 297, 301 [1–3]. It has been said that, "there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced. * * * The question of the qualification of a juror is a question to be decided by the court, and not one to be decided by a juror himself. It is the prerogative and duty of the trial court to exercise a wise, judicial discretion in this regard, and the conclusion of the court should rest upon the facts stated by the juror with reference to his state of mind, and should not be allowed to depend upon the conclusions of the juror as to whether or not he could or would divest himself of a prejudice he admitted existed in his mind." Theobald v. St. Louis Transit Co., 191 Mo. 395, 90 S.W. 354, 359; State v. White, 326 Mo. 1000, 34 S.W.2d 79, 81 [2–4].

Defendant's challenge of venireman Davis for cause, on the grounds stated, was directed to the sound discretion of the trial court. In the determination of the qualifications of a prospective juror, the Court has a very wide discretion and his rulings should not be disturbed unless they are clearly and manifestly against the evidence. State v. Camper, Mo.Sup., 353 S.W. 2d 676, 678 [2–4]; Johnson v. Missouri-Kansas-Texas R. Co., supra, 374 S.W.2d 1, 3 [1–5]; Strahl v. Turner, Mo.Sup., 310 S.W.2d 833, 840–841 [11 & 12]; Paige v. Missouri Pac. R. Co., Mo.Sup., 323 S.W.2d 753, 765 [16, 17]; State v. Hinojosa, Mo. Sup., 242 S.W.2d 1, 7 [7]; State v. Walton, 74 Mo. 270, 284; State v. Brooks, 92 Mo. 542, 575, 5 S.W. 257; State v. Poor, 286 Mo. 644, 228 S.W. 810, 814 [5]; State v. Jones, 64 Mo. 391, 397. It is our view that no abuse of the trial court's discretion appears from this record. Venireman Davis was not disqualified as a matter of law, as claimed by appellant, and the Court did not abuse its discretion in refusing to sustain the challenge for cause.

Appellant further contends that "the Court erred in holding that Sec. 556.280 RSMo 1959 (Habitual Criminal Act) applicable to this Defendant for the reason that the State failed to prove Defendant was convicted of the felony alleged in the amended information and failed to prove identification of Defendant and that the Defendant had been released as provided in said statute." The amended information set out in the transcript alleges that the prior conviction was for "stealing a motor vehicle," and in State's Exhibit 1, which purports to be the trial court's record of this prior conviction in the case of State of Missouri, Plaintiff, vs. Charles Ferguson, Defendant, No. 3237, "Car Theft," the following order appears: "Now on this day the State appears by the Prosecuting Attorney. Defendant appears in person and by his attorney Wm. J. Hensley. Special reporter is sworn. Defendant arraigned and waives formal pleading [sic] of amended Information and for his plea says he is guilty as charged. The Defendant granted allocution. The Defendant sentenced to be committed to custody of the State Board of Correction for a Term of

Two Years. * * *." It is true that the exhibit includes a further certified copy of a judgment in the same Case No. 3237 which is styled State of Missouri v. Charles H. Ferguson, No. 3237, setting out a more detailed and extended form of judgment, in which there is a recital that, "the defendant being duly arraigned, waives the reading of the information and enters his voluntary plea of guilty to the charge therein contained * * *." And there is a further recital that "the court states to the defendant that he has voluntarily entered his plea of guilty to the said charge of STEALING, a felony, and now asks the defendant if he has any legal reason to give why judgment should not be pronounced upon him in accordance with his plea of guilty * * *."

The State further offered the testimony of the sheriff of the county to the effect that he knew Charles Jones, the defendant in this case, and that he had known him also under the name of Charles Ferguson and Charles H. Ferguson, as described in Plaintiff's Exhibit 1; and that under the judgment and commitment in the case of State ·v. Chas. Ferguson, Case No. 3237, he took the defendant in that case, who is the defendant in the present cause, to the penitentiary, and that at that time defendant was going by the name of Charles Ferguson. This testimony was entirely sufficient when believed, as it was, to establish defendant's prior conviction· for a felony. We think that, in view of the copy of the amended information as set out in the transcript and the certified copy· of the records of the Circuit Court of Johnson County in the mentioned cause, No. 3237, and the sheriff's testimony, the evidence was entirely sufficient to prove the allegation in the amended information that defendant had been previously convicted of the felony of "stealing a motor vehicle." State v. Baugh, Mo.Sup., 323 S.W.2d 685, 690 [6, 7].

State's Exhibit 2 further shows that Charles H. Ferguson was imprisoned both in the State Training School and subsequently in the state penitentiary at Jefferson City and that he was discharged upon commutation of sentence on February 1, 1963. It was only necessary for the State to show that defendant had been imprisoned under the prior conviction for a felony and not additionally that he had been released therefrom, since the present statute only requires a finding that subsequent to the conviction and sentence the defendant was "subsequently placed on probation, paroled, fined or imprisoned therefor." Section 556.280, as amended Laws 1959, S.B. No. 117, § 1; State v. Tucker, Mo.Sup., 362 S.W.2d 509, 514 [12].

Appellant further contends that "The Court erred in submitting to the jury State's instruction No. 2 for the reason that thereunder the jury could find a verdict of guilty on less evidence than it would require to find a verdict of not guilty; that said instruction used the word 'duty' to find guilt and the word 'should' to find an acquittal." Instruction No. 2 was apparently taken from the opinion in State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 26 [7].

We find no merit in this assignment of error or in the argument in support of it, where it is contended that under this instruction the jury "must consider 'all' the evidence for acquittal, but only consider 'the' evidence to a verdict of guilty." Appellant insists that the Court should reconsider the position it has many times taken in approving instructions in substantially the same language. We find no error in Instruction No. 2 which in our view, in the respects mentioned, is favorable to defendant. State v. Turner, Mo.Sup., 320 S.W.2d 579, 584 [10]; State v. Williams, Mo.Sup., 376 S.W.2d 133, 135 [3]; State v. Cheatham, Mo.Sup., 340 S.W.2d 16, 20 [10]. The assignment is overruled.

Appellant further contends that "the Court erred in failing to sustain the objection of the defendant in closing argument of the State when reference was made to 'duty to community' to be performed by the jury, for the reason that such argument was im-

material and irrelevant and deprived defendant of a fair trial."

The record shows that the prosecuting attorney in the first portion of his closing argument stated: "It is important to our community that in commercial life, matters that people rely on in every day affairs, that they be protected from this type of fraudulent activity." The objection interposed by defendant to this argument was that it was immaterial, irrelevant and improper argument. The objection was overruled.

■ The applicable law is well stated in State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 306 [7, 8], as follows: (We shall omit the authorities supporting the several statements.) "It has long been held that so long as a prosecutor stays within the record and its reasonable inferences, he may legitimately argue the necessity of law enforcement as a crime deterrent, and he may argue also that the responsibility for the suppression of crime and the protection of the public rests upon the trial juries. * * * And the authorities also hold that it is permissible for the prosecutor to draw and state his reasonable inferences concerning the effect which may result from the jury's failure in this regard. * * * It has been held entirely proper for the prosecutor to ask for a severe penalty as a deterrent to crime, if the jury believes the defendant guilty. * * * And it is not reversible error for the prosecutor to tell the jury that the community or the people will be watching the result of the trial. * * * Such remarks have been characterized as a mere 'rhetorical appeal.' " And see State v. Dipley, 242 Mo. 461, 147 S.W. 111, 117 [22]; State v. Feltrop, Mo.Sup., 343 S.W.2d 36, 38 [8, 9]; State v. Cheatham, supra, 340 S.W.2d 16, 20 [11, 12]; State v. Gridley, Mo.Sup., 353 S.W.2d 705, 707 [10–12]; State v. Cox, Mo.Sup., 352 S.W.2d 665, 671 [9–11].

■ Appellant recognizes that the rule stated in the Laster case, supra, is in force in this State, but he insists that "this rule is wrong" and asks this Court "to reverse this line of cases." Appellant's theory apparently is that the argument is unfair and is not directed to the guilt or innocence of defendant. Appellants says that such argument by a prosecuting attorney is devastating to a defendant. Appellant argues that "there is no way to test the feelings of the community or their thinking on this particular type of crime"; that the facts stated in the argument were not relevant and material to the issues in the case; and that as a result of such argument "the defendant is left hanging in his chair" with no way to make an adequate reply, particularly when the Court lends "its majestic power to the point, by overruling the objection" to this type of argument. Appellant insists that the argument "puts the pressure on" and deprives a defendant of a fair trial.

We think the trial court properly ruled the objection to the prosecuting attorney's argument. We find no sound basis for refusing to follow the established precedents. The assignment of error is overruled.

Appellant further contends that "the Court erred in allowing witness Nora Ginn to testify that she received no funds from the check alleged to have a forged endorsement, and the defendant was prejudiced in not being allowed to comment in argument about such non-payment prior to time of crime alleged in information; the admission of such evidence and deprivation of right of argument tending only to prejudice the minds of the jury against the defendant."

The testimony that Nora Ginn received no money on the check in question "from any person whatever" was put in evidence before any objection was made. After the evidence was before the jury, an objection was made that the question called for facts outside the issues in this particular case. The objection was overruled and the question was again answered.

Defendant's counsel by cross-examination of Mrs. Ginn showed that she presented the check to one of the cashiers of the

Peoples National Bank and that, "They referred me upstairs"; and that she went upstairs. The State also showed by Mrs. Maxine Miller, who was a machine book-keeper at the bank, that it was part of her duties "to check instruments and check on accounts on which the instruments can be paid"; and that the words "No account," and her initials on the face of the check, were in her handwriting.

■ Since the fact that Mrs. Ginn received no money on the check came into evidence before an objection was made there was no error in its admission. Further, after objection was made there was no request that the prior answer be stricken. Further, the same fact could be inferred from other evidence in the record, including the fact that the check was presented to the bank for payment and the bookkeeper wrote across its face the words "No account." Also, there was evidence that Clifford Racy, the payee in the check, had never heard of the maker of the check, James Brown, and that the name endorsed on the back of the check was not the signature of Racy or made by him. In view of the record in the case, the defendant could not have been prejudiced by the evidence complained of whether it was properly admissible in the case or not.

■ Appellant further argues that "there is no requirement to sustain the crime of forgery that the forger actually obtain something of value," citing State v. Witherspoon, 231 Mo. 706, 133 S.W. 323, 326, and 23 Am.Jur., Forgery, § 28, p. 687. However, the receipt of the doughnuts and the balance in money for the check with the forged endorsement were a part of a single transaction and so closely related to the forging of the endorsement that it was competent for the State to show the circumstances accompanying the making of the endorsement and the purpose for which it was made. The record further shows that no objection was made to the testimony of Mrs. Abbott in respect to the making of the endorsement and the money and property obtained thereby. Appellant also argues that the alleged forgery preceded the alleged non-payment of the check and hence he should have been permitted to argue to the jury that the "non-payment of the check could not have occurred before the arrest and identification of the defendant as the alleged passer of the check"; and that in sustaining an objection to this argument the Court erred and "compounded its own error in allowing the question of non-payment to come into the case during testimony of the witnesses." We find no merit in this assignment, since the evidence complained of came into the record before objection was made and there was no motion to strike. Further, under all the evidence in the case an inference could clearly be drawn that the check in question would not be paid.

We have also examined the record in regard to those matters not required to be preserved in the motion for a new trial or presented in appellant's brief and find no prejudicial errors.

The judgment is affirmed.

All concur.