**STATE of Missouri, Respondent,**

**v.**

**Willie HARRIS, Appellant.**

**No. 53116.**

Supreme Court of Missouri,
Division No. 1.

March 11, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, William A. R. Dalton, Sp. Asst. Atty. Gen., Springfield, for respondent.

Parks G. Carpenter, St. Louis, George Hubel, St. Louis, for defendant-appellant.

HENLEY, Presiding Judge.

Defendant was charged by information with burglary in the second degree. Section 560.070.[1] The information also alleged that prior to the offense charged he was convicted, sentenced and imprisoned for two other offenses of burglary, second degree. Section 556.280. Prior to submission of the case to the jury the court determined that defendant had been previously convicted, sentenced and imprisoned, as alleged; a jury found him guilty, as charged; the court assessed his punishment at imprisonment in the penitentiary for a term of seven years, § 560.095(2); his motion for new trial was overruled and he was sentenced in accordance with the verdict and the prior assessment of punishment. He appeals. We affirm.

No contention is made that the evidence is insufficient to sustain the conviction; hence, a brief statement of the facts will suffice. The Ellis Pool Room located at 2303 Franklin Avenue in the City of St. Louis was closed and all outside entrances securely locked at about one o'clock, a. m., on March 20, 1966. One light was left

---

[1]. All statutory references are to RSMo 1959 and V.A.M.S.

burning above the rear pool table, as was the owner's custom. At about three o'clock that morning, Patrolman Robert Leggitt of the St. Louis Metropolitan Police Department, and his partner, Patrolman Phil Stockton, were slowly traveling west in a police car on Franklin when Leggitt saw a shadow "duck down" behind a pool table in the pool room. Leggitt stopped, he and his partner got out, and as they were approaching the pool room, while still in the street, the front door of the pool room "* * * came flying open and * * * one male subject [defendant] came running out the front door and east on Franklin to * * * the corner of 23rd and Franklin * * * [and] turned north on 23rd street * * *." One business, a restaurant, is located between the pool room and 23rd street. The officers gave chase, never losing sight of defendant between his exit from the pool room and his apprehension and arrest on 23rd street fifty or sixty feet north of the corner. As he was being searched, defendant dropped a rat tail file. Immediately after the arrest the officers returned to the pool room with defendant in custody. The hasp and padlock, which were secure and locked two hours earlier, had been pried loose from the front door which was then standing open; inside the premises the officers found evidence of a recent attempt to pry open two vending machines; a small radio that had been left on a shelf was found on the floor beside a vending machine.

The record contains a transcript of the proceedings and evidence heard at defendant's preliminary examination in the St. Louis Court of Criminal Correction. The preliminary hearing was held on two dates, the first session on April 6, at which two witnesses were heard, and the second on April 8, 1966, at which a third was heard. Defendant was not represented by counsel at the first session; at the second he was represented by Ellis Outlaw, Esq., a member of the St. Louis bar who had been employed by defendant's mother.

Because of the nature of some of the points raised in defendant's brief and argument we relate at this point a brief chronology of events pertaining to his several counsel. After the information was filed in circuit court (on April 12, 1966), Mr. Outlaw entered his appearance for defendant on April 21. On June 21 Mr. Outlaw filed a motion alleging that he had reason to believe that his client was "mentally unbalanced" and in need of psychiatric treatment; he prayed that defendant be committed to a hospital for such treatment. He was so committed in October and on December 27, 1966, the Director of Malcolm Bliss Mental Health Center of St. Louis filed a report of a psychiatric examination of defendant and his mental condition as of December 23. Briefly, the report stated that defendant showed no evidence of mental disease or defect; that he was able to cooperate with counsel in his defense. On January 17, 1967, Mr. Outlaw was granted leave to withdraw as counsel, "* * * at the request of the defendant." On the same day, the court appointed the St. Louis Public Defender to represent defendant, "* * * at the request of defendant and his mother * * *." Mr. George Hubel of the Public Defender's Office represented defendant at his trial on March 20 and 21. After the verdict was entered, the court, on request of Mr. Hubel, appointed Mr. Parks G. Carpenter as additional counsel to help prepare the motion for new trial. Mr. Carpenter, a member of the St. Louis bar, joined with Mr. Hubel in preparation of defendant's brief and also presented oral argument in this court.

█ In his first point defendant contends that his federal and state constitutional rights were violated in that he was neither offered nor provided with counsel at the first session of his preliminary hearing in magistrate court. He asserts in argument that the preliminary examination was a critical stage of the criminal proceedings against him and that to deny him counsel at that stage constituted prejudice per se.

This court held in State v. Turner, Mo., 353 S.W.2d 602, 604 [8], that "Neither the federal or state constitution, nor any of our statutes require the magistrate to appoint counsel for the accused at a preliminary examination." That, and subsequent decisions,[2] have held in effect that in this state the preliminary examination of an accused is not a critical stage of a criminal proceeding.

There is no contention by defendant that anything occurred at the first session of the preliminary hearing that resulted in his being prejudiced. We have examined the transcript of the proceedings at that session and find nothing that occurred which conceivably could be said to have caused any of his rights to be prejudiced. There is the contention that because he did not have counsel he was deprived of the right to cross-examine the state's witnesses at that session, but he had that right at the second session, at which he had counsel of his own choice. He makes no effort to explain why his counsel did not recall these witnesses for cross-examination at that session. From this we reasonably may infer that he had his own reasons for not doing so, and elected to waive the right he now belatedly raises as a deprivation of constitutional due process.

He asserts that Sup.Ct. Rule 23.03, V. A.M.R., "* * * clearly and explicitly calls for appointment of counsel at preliminary hearing in cases such as the one at bar * * *;" that State v. McClain, supra, without mentioning the Rule, renders the Rule "* * * null and void and of no consequence * * *;" therefore, we should reconsider the holding in the McClain case and "* * * now declare that the violation of Supreme Court Rule 23.03 should constitute inherent prejudice to a defendant's legal and constitutional rights." The rule is quite clear in what it does require; it does not require the appointment of counsel for an accused, indigent or otherwise, at his preliminary examination. See majority opinion in State v. Turley, supra. State v. McClain, supra, did not have the effect defendant ascribes to it. Defendant cites Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but those decisions are not applicable to the facts in this case.

Defendant's second point is that his federal and state constitutional rights were violated in that he was not afforded a prompt and speedy trial.

His trial in circuit court began March 20, 1967, exactly one year from the date of the offense. During nine of those twelve months he was represented by counsel employed by his mother. After employed counsel was permitted to withdraw, the Public Defender was appointed to represent him, and two months thereafter his trial began.

The record does not support defendant's assertion that he was unconstitutionally deprived of a speedy trial. On the contrary, the record shows that the delay of which he now complains was due to his own action. Before his trial commenced the court stated: "Let the record * * * show that this case has been set for trial on not less than eight prior occasions, and it was continued on each occasion except one by the defendant and on one occasion by the court." In the light of this record, defendant is in no position to complain that he was denied a speedy trial. He waived his right to trial on the date for which the case was set each time he requested and was granted a continuance; and, he was granted a continuance on at least seven occasions over a period of not more than eleven months, and during that period he was undergoing tests

---

**2.** State v. McClain, Mo., 404 S.W.2d 186, 188-9 [2]; State v. Turley, Mo., 416 S.W.2d 75, 76 [1-4]; State v. Durham, Mo., 416 S.W.2d 79, 82 [5-7].

in a hospital, at the instance of his counsel, for approximately two months. There is no merit in defendant's second point and it is denied.

Defendant's third and fourth points may be treated together. His third point is: "The court erred in failing to appoint at defendant's request effective counsel who could and would make objections to certain inadmissible opinion and conclusion testimony essential to the State's case, and who could and would hold defendant in check to prevent prejudicial comments by him to the jury." His fourth point is: "The court erred in threatening to put defendant 'in jail forever' and in inviting defendant in the presence of the jury personally to address the jury and in immediately thereafter convicting defendant of contempt of court for so addressing the jury."

 It should be noted at this point that the court's "threat" to put defendant "in jail forever" was made in chambers, outside the presence and hearing of the jury, during a recess called by the court at the conclusion of the voir dire examination of half the jury panel, to attempt to persuade defendant that he should not make further remarks and continue to conduct himself in such manner as would be likely to work to his prejudice in the eyes of the jury. It should also be noted at this point that the proceeding at which the court found defendant guilty of contempt was conducted outside the presence and hearing of the jury after all the evidence was in and immediately before the instructions were read to the jury. To relate all that defendant said and all that occurred during the trial leading up to the events of which defendant complains in his fourth point would give a graphic picture of what is meant by defendant's complaint in his third point that he was not furnished counsel " * * * who could and would hold defendant in check to prevent prejudicial comments by him to the jury." But, to do so would extend this opinion

beyond reasonable length. It would suffice to narrate two or three occurrences. The record supports this conclusion: defendant decided in the beginning to say and do anything likely to disrupt the orderly procedure of the court, because he was dissatisfied with the court's appointment of the public defender to represent him. (He indicated that he had previously requested the judge of another division of the court to appoint counsel of his (defendant's) own choice. The record refutes this and, of course, the court is not required to appoint counsel chosen by an accused.) Note these remarks made after the jury was discharged: "Your Honor, I was misrepresented; forced to trial with a public defender. * * * That's why I made the display in court, and I would do it again if that happened."

At the conclusion of a part of the voir dire examination the defendant asked the court whether he could speak and, interrupting the judge's answer, asked again: "May I speak?" The judge suggested that if he had anything to say, he say it to his counsel. Defendant said: "I would like to speak to you though" and interrupted the judge's answer to say: "I would like to speak now." Ignoring the judge's suggestion that he say nothing further until he could reach the bench, defendant said: "Why not?" When he reached the bench, the judge told defendant to say to him whatever he had to say, but that he not talk loud enough for the jury to hear. He ignored this admonition and said aloud: "Why can't I say that I'm being railroaded?" At this point the court declared a recess and retired to the judge's chambers with counsel for the state and defendant, and the defendant. There he was asked and permitted to state what it was he wanted to tell the court. He appeared to have said all that he intended. Briefly, his remarks consisted of a complaint that he was denied counsel at his preliminary, that his trial counsel was from the Public Defender's Office and was not prepared for this trial, and that the arresting of-

ficers beat him at the scene of the crime. At the close of the conference in chambers, the judge advised defendant that it would be to his interest that he not make speeches during the course of the trial, and admonished him that if he interrupted the trial again with a speech he would be in contempt of court and would be sentenced to jail for contempt. Defendant insisted that he would " * * * take that chance" and make a speech whenever he desired, saying: "I have to. I'm going to make one whenever I go out there."

Later, near the close of the trial, as the court was addressing a question to defendant's counsel, defendant interrupted, saying: "Man, I want to speak. I've been threatened by the officials here in court and by you, the judge, and I would like to speak in may own behalf. * * *" Defense counsel tried to interrupt his client, but defendant persisted, ignoring the judge's request that he be seated by interrupting the judge several times to repeat: "May I speak?" At one point, defendant's mother spoke out from the audience: "Please." Defendant replied: " * * * I'll be seated as soon as I speak, but could I speak?" At this point the court said: "Say what you want to say, Mr. Harris. If you want to say it, say it." After defendant made several statements, among which was, "I'm an ex-convict * * *," the court declared a recess and, out of the presence of the jury, found defendant guilty of contempt of court. As the jury was being returned to the courtroom, defendant again rose and continued with his speech. The judge interrupted him long enough to say: "All right, Mr. Harris. You just keep on talking now. You just go ahead and talk all you want. When you get through talking, you let us know." Defendant continued; his remarks being recorded on four pages of the transcript. They do not warrant repeating here.

As stated, defendant contends in his third point that the court did not provide him with effective counsel. He concludes that counsel provided was ineffective, partially

because counsel did not object to certain evidence which he (defendant) characterizes as "inadmissible opinion and conclusion testimony." He asserts that counsel should have objected to this testimony, because it expressed merely the opinions and conclusions of the witnesses and was therefore inadmissible; that without this evidence the state would have failed to make a submissible case; consequently, he says, counsel was not "effective."

In this connection defendant refers to and quotes parts of seven answers given by three witnesses when they were asked to "describe the condition of" or "what they observed in" the pool room shortly after defendant's arrest. We need not set out this particular testimony; we have carefully examined it; its substance was that there had been a "burglary" of the pool room and that the burglar had "moved the radio" and had tried but failed to "break in" the coin vending machines.

In the first place, the questions which elicited these answers were not objectionable for any reason; nor do we consider the answers objectionable (or subject to motion to strike, etc.) for the reasons which defendant and his added appellate counsel would now, in retrospect, have had his trial counsel interpose. But, if the answers were objectionable for any reason, the mere failure to object does not establish that counsel was ineffective. State v. Whitaker, Mo., 312 S.W.2d 34, 41 [17]. This record convinces us, as it did the trial court, that defendant was skillfully and competently represented by Mr. Hubel throughout the trial, albeit under very difficult circumstances.

The court said in State v. Turner, Mo., 353 S.W.2d 602, 605 [9]: "The accused is entitled to a fair trial but not a perfect one." Defendant had a fair trial; he would have had a perfect trial, except for his own actions for which he now seeks to condemn others. It is quite clear from this record that neither trial counsel nor any other counsel could have succeeded in persuading

this defendant from making comments to the jury. The opinion and conclusion testimony, so called, was not essential to the state's case; there was ample evidence to sustain the conviction without it.

█ As stated, the proceeding at which the court first warned defendant that he would be found in contempt should he continue to disrupt the court with remarks or speeches, and that at which he was finally found guilty of contempt were both held outside the presence and hearing of the jury. There is no indication in the record that the jury had any knowledge of what transpired on either of those occasions; hence, neither of these matters could have influenced the jury to defendant's prejudice. The jury may well have been exasperated by defendant's demeanor and remarks, but such prejudice as may have resulted from that may not be laid at the doorstep of the court or counsel. The right to due process is not a license to ignore the rules necessary to guarantee a fair trial.

Nothing was said or done by the judge in the presence of the jury which reasonably could be construed as prejudicial to the rights of defendant; he was patient, yet firm; he was firm in his determination to preserve that order necessary to the conduct of a fair trial; he was firm in his determination to accord defendant all of his rights. While the judge yielded to defendant's demand to speak near the close of the trial, it may not be said that he thereby erred to defendant's prejudice, although it is obvious that the judge was of the opinion that for defendant to address the jury would likely be a mistake working to defendant's detriment. The trial had reached the point where it was no longer possible for the court to protect defendant from himself.

Defendant assigns as error the action of the court in overruling his challenge of venireman Richard D. Smallwood for cause, thus requiring him to use one of his peremptory challenges to remove Smallwood from the jury list.

The record shows that venireman Smallwood raised his hand when the panel was asked whether any of them "* * * ever had their car stolen, their house broken into * * *." Mr. Smallwood stated that his home had been burglarized twice, once in 1960 and again in 1964, with a total of about $7,500 in personal effects being taken; that his automobile was stolen about two months before this trial and recovered three days later, wrecked; that no one had been apprehended for those offenses. When asked whether these experiences would affect him "* * * in serving on a jury," he said: "I think they might." At this point the court took over examination of the venireman, calling his attention to the fact that "* * * our experiences in life always affect us * * *." In response to an inquiry by the court, Mr. Smallwood indicated that these experiences would not cause him to be unable to give defendant a fair trial. When asked whether he could listen to the evidence, weigh it, follow the court's instructions, and reach a verdict based solely on the evidence and the law, he said: "I believe I could, Sir." When asked whether he could give both the state and defendant a fair trial based solely on the evidence in this case and the instructions, he replied: "I could do that I'm certain." Later, he was asked by defense counsel whether he might during the course of the trial, think of the burglaries of his home and the theft of his car. He said: "Well, I can't rule those out entirely. There is a possibility." When asked whether he harbored any bitterness as a result of those incidents, he answered: "I know he's not personally responsible for those. Naturally if you've been inconvenienced and had personal effects taken you're not very happy about it." The last question asked him was: "Did you state before that you think that these events might effect [sic] you in this deliberation of this?" His reply was: "I just said I don't feel like he would be personally responsible for those, but I—I—I feel I could sit here impartially and listen to the facts in this case without being overly prejudiced."

The challenge of venireman Smallwood for cause was on the ground that defense counsel was of the opinion that Smallwood's experiences in connection with the two burglaries of his home and theft of his car would affect his "feelings" in this case.

The challenge for cause, on the ground stated, was directed to the sound discretion of the trial court. That court has a wide discretion in determining the qualifications of a venireman and its decision thereon should not be disturbed except for a clear abuse of discretion. State v. Jones, Mo., 384 S.W.2d 554, 558 [1, 2], and cases there cited. In State v. DeClue, Mo., 400 S.W.2d 50, 57 [14], this court said: "Certainly a clear line of demarcation cannot be drawn as to when a challenge for cause should or should not be sustained. Some cases will be ones where an appellate judge might have done differently but at the same time cannot say that there was an abuse of discretion * * *." Each case must be judged on its particular facts.

A determination by the trial judge of the qualifications of a venireman necessarily involves a judgment based on an observation of the demeanor of the venireman and, in the light of that observation, an evaluation and interpretation of his answers as they relate to whether he would be fair and impartial if chosen as a juror. The trial judge is in a far better position to make that determination than are we from the cold record.

The ruling of the trial court is not clearly and manifestly against the record of the voir dire examination of this venireman; on the contrary; the record supports the ruling and the court did not abuse its discretion in refusing to sustain the challenge for cause.

Our examination of other matters we review under Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.