**STATE of Missouri, Respondent,**

v.

**Richard Lynn LAND, Appellant.**

**No. 56380.**

Supreme Court of Missouri,
Division No. 2.

April 10, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, St. Louis, for respondent.

Charles M. Deeba, St. Louis, for appellant.

MORGAN, Presiding Judge.

Defendant, as a second offender, was tried to a jury and found guilty of first degree robbery. The court assessed punishment at seven years confinement.

As appellant, defendant now alleges that he was denied a fair trial and submits six points to sustain his argument. However, it is only necessary that we reach one of such contentions, i. e., that the trial court erred in forcing appellant to exercise one of his peremptory challenges to remove a

prospective juror who should have been disqualified for cause. We believe appellant's position had merit and should have been sustained.

During voir dire, it was brought out that a venireman named Bachesta had been a participant, as a victim, in two armed robberies. In one he had been "tied up," and in the other he had been "robbed at gunpoint." The last two questions directed to Bachesta by the state, and his answers, were:

"[Prosecutor]: Mr. Bachesta, we are going to be talking about two women who run a confectionery—a grocery store. And the testimony will be to the effect that they were robbed with a gun. Would the similarity of the incident bother you?

Mr. Bachesta: I would say I have been thinking of that, but I do have in the back of my mind . . . .

[Prosecutor]: What I am driving at, can you take the evidence and the law and make up your mind only on those two things?

Mr. Bachesta: Yes."

Defense counsel tried to bring out what Bachesta had "in the back of [his] mind," and although he failed specifically to accomplish this, it is of interest that Bachesta, when questioned further, immediately went into his status as a store manager at the time the "robbery happened." Thereafter, defense counsel fully explored the details of Bachesta's prior experiences and the interrogation concluded with the following dialogue:

"MR. DALE: Having been a victim like this, you feel you can still be fair?

MR. BACHESTA: Yes.

MR. DALE: And your practice with your personnel and instructing them and knowing they are vulnerable, you still feel you can be honest? I am concerned that you might lean a little toward the State.

MR. BACHESTA: No, in all frankness, I think I might be.

MR. DALE: Surely. If your Honor please, I move that this juror be stricken for cause.

THE COURT: Well, this is engaging in speculation. Could you be guided by the evidence and the instructions in this case?

MR. BACHESTA: Yes.

THE COURT: I don't think he has.

MR. DALE: He has indicated he might lean toward the State.

THE COURT: Subconsciously he might. That is quite a bit of speculation. So I don't think the man is disqualified.

MR. DALE: Thank you.

THE COURT: Overruled."

The issue to be resolved does not call for consideration of any novel question of law but only the proper application of longstanding principles to the precise factual situation presented. Such principles have been the subject of an untold number of cases.

The trial of conflicting causes before a fair and impartial jury is essential to justice. This fact has been the fundamental truth underlying our system of jurisprudence. To create such a jury, it is a basic necessity that prospective members thereof be unbiased and unprejudiced. "Securing such a jury, however, is not a matter of absolutes and the right to a fair trial is deemed satisfied where the jury panel has been properly tested on *voir dire* and is otherwise legally constituted. Fundamentally, of course, whether a juror is fair and impartial lies peculiarly in the mind and heart of the individual juror. Whatever lurking prejudice he might have in a particular instance may well be exposed only through psychological analysis. Suffice it to say that such a personalized approach is not within the province of the courts and the practical administration of

justice." Smith v. Nickels, Mo.App., 390 S.W.2d 578. Such limitations, however, must not deter a court in its efforts nor detract from its ultimate objective of seeking a fair jury. The difficulty of the task has driven some to suggest that the objective has been met if the questionable venireman fails, otherwise, to be one of the twelve selected. Perhaps justice could be served just as well with such an approach; but, "It is the settled law of this state that the defendant in a criminal case is entitled to a full panel of qualified jurors before he is required to make his peremptory challenges; . . . " State v. Foley, 144 Mo. 600, 46 S.W. 733, 735 (1898), and we need not change our course at this time. State v. Hirsack, Mo., 465 S.W.2d 543.

■ With a cross-section of society appearing as veniremen, an area is involved that not only cannot but should not be standardized. Recognition of this fact requires that there continue to be a broad discretion in the trial court; and that the exercise of such discretion should not be disturbed unless found to have been abused. In addition, doubts should be resolved in favor of the finding of the trial court. State v. Wilson, Mo., 436 S.W.2d 633, 637. "This does not mean, however, that this court should not and does not review the facts of each particular case, when such question is raised, to determine whether or not there was an abuse of discretion. * * * Each case must be judged on the particular facts in that case." State v. DeClue, Mo., 400 S.W.2d 50, 57; State v. Spidle, Mo., 413 S.W.2d 509; State v. Harris, Mo., 425 S.W.2d 148. Prior to approaching our immediate task, we further note that the trial court is to judge the qualifications of a prospective juror and that it is not a decision for the individual person involved. As said in Theobald v. St. Louis Transit Co., Mo., 191 Mo. 395, 90 S.W. 354 (l.c. 359): "It is proper to examine a juror as to the nature, character, and cause of his prejudice or bias, but it is not proper to permit the juror, who admits the existence in his mind of

such prejudice or bias, to determine whether or not he can or cannot, under his oath, render an impartial verdict. Such a course permits the juror to be the judge of his qualifications, instead of requiring the court to pass upon them as questions of fact."

■ As to the instant case, appellant submits that, "Of paramount import however is not the parallels between the venireman's experiences and the case at bar, but rather the trial court's finding that Mr. Bachesta *might subconsciously lean toward the state*." To the contrary, the state suggests that the trial court's statement was not a "finding" and we should look to the "ultimate finding" that Bachesta was qualified to sit in judgment of appellant. As noted, those questions and answers omitted from this opinion, as well as those quoted, pertained to Bachesta's past experiences. The fact such prior events happened did not as a matter of law disqualify him from sitting, State v. Harris, supra; but they are important in so far as they might have prejudiced the prospective juror against the appellant. When Bachesta answered: "No, in all frankness, I think I might be," he was responding to a double-barrelled situation. He could have meant he might be "honest" or he might "lean a little toward the State." Since honesty was not the issue and had not been the subject of any other question, fairness demands the answer be accepted as being in response to the second question. In any event, the trial court did, as appellant contends, conclude that, "Subconsciously he might." From the record presented, we can not accept such as simply a generalization that all prior victims of a robbery might have a lurking prejudice in favor of prosecution, but we must accept it as a factual determination made after hearing the questions and answers noted and observing the demeanor of the individual concerned in this particular case. Having so found, the court should have sustained the challenge for cause and not have preempted one of the peremptory challenges accorded appellant by the laws of this state. Deference

to the action of the trial court is no longer in the picture after such a factual finding, and we have concluded that it was an abuse of discretion not to have sustained appellant's challenge of Bachesta for cause.

The judgment is reversed and the cause is remanded.

HENLEY and DONNELLY, JJ., and SMITH, Special Judge, concur.