STATE of Missouri, Respondent,

v.

Thomas B. GORDON, Appellant.

No. KCD 28173.

Missouri Court of Appeals,
Kansas City District.

Nov. 1, 1976.

Thomas M. Larson, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

Thomas B. Gordon was convicted of stealing a leather coat from Macy's with a value of over $50.00. The court assessed punishment at five years imprisonment absent a sentence by the jury.

On this appeal Gordon principally urges reversal of his conviction on the grounds of an abuse of discretion in the failure of the court to excuse a venireman for cause. Reversed and remanded.

During the voir dire the following occurred:

MR. BLOEMKER (Defense Counsel): Are any of you right now, or have you in the past, been a member of any law enforcement agency, either civilian or military, the MPs, the Shore Patrol, Air Police, anything of that sort? Yes, sir.

VENIREMAN EDGAR: Edgar.

MR. BLOEMKER: Mr. Edgar.

VENIREMAN EDGAR: Twenty-one years in the Air Force and Army, base security officer, provost marshal,—

MR. BLOEMKER: All right.

VENIREMAN EDGAR: I was a police officer at Houston Lake.

MR. BLOEMKER: Okay, Mr. Edgar.

The three of you who answered yes to that question, let me pose one question specifically to just you. Do any of you think that your experience as a police officer, or military police officer or what not, could in any way affect the judgment that you might make in this case?

VENIREMAN McCLAIN: No.

MR. BLOEMKER: All of you feel that you could still give us a fair and impartial hearing?

VENIREMAN EDGAR: I think it might affect mine. I have other extenuating circumstances. I have other reasons, which hasn't been asked.

MR. BLOEMKER: I beg your pardon, sir.

VENIREMAN EDGAR: I said I have another reason but the question hasn't been asked.

MR. BLOEMKER: All right. But you feel that your experience as a police officer would have some effect on it also?

VENIREMAN EDGAR: Possibly.

MR. BLOEMKER: Well, maybe at this time I will just ask you what do you feel are the other reasons that might affect you?

VENIREMAN EDGAR: Well, my wife is with the Kansas City Police Department and we have close and intimate friends throughout the department.

MR. BLOEMKER: Mr. Edgar, do you think that you could give us a fair and impartial hearing in this case, or do you think that it would be impossible for you to do so?

VENIREMAN EDGAR: I would hope I could, but there is some doubt.

MR. BLOEMKER: You have doubt in your mind?

VENIREMAN EDGAR: Yes.

THE COURT: Would you like to ask him some questions?

MR. HALL (Assistant Prosecuting Attorney): Yes.

Mr. Edgar, could you take all the evidence that comes from this stand, and weigh it and come to a just—go up to the jury room—

VENIREMAN EDGAR: I would hope so.

MR. HALL: —and come to a just verdict? You believe you could?

VENIREMAN EDGAR: I would hope so.

MR. HALL: Thank you very much, sir.

After further questions to the panel, counsel for both the State and Gordon announced they had no further voir dire examination. Thereupon the following occurred:

MR. BLOEMKER: I would request that Mr. Edgar be struck for cause. I think he has indicated he does have doubt in his mind as to whether he could render a fair and impartial verdict in this case.

THE COURT: He was questioned on that.

MR. HALL: I believe he answered he hopes and believes he could.

MR. BLOEMKER: He said he hoped that he could, but he had doubt in his mind.

THE COURT: Do you want to question him further?

MR. HALL: I don't think its necessary. He already stated that he could.

MR. BLOEMKER: I don't believe that's correct. I believe he stated he had doubt in his mind he could be a fair and impartial juror.

THE COURT: Why don't you ask him then? I didn't understand him to say that.

(The proceedings returned to open court)

MR. BLOEMKER: I would like to ask Mr. Edgar one further question, if I could. Mr. Edgar, we just want to clear something up. Do you have some doubt in your mind as to whether you can sit fairly and impartially in this case?

VENIREMAN EDGAR: I don't really have doubt. I brought up the fact that

the majority of my life being on the side of law enforcement, etc., etc., including the present, I wanted to make it known to both sides that this was the case. I have always tried to make a fair and impartial judgment of all the facts.

MR. BLOEMKER: Do you think that your association with law enforcement, both your own and your wife's, would have any effect on the decision you might make in this case?

VENIREMAN EDGAR: I don't think so.

MR. BLOEMKER: All right. Thank you.

VENIREMAN EDGAR: It should not.

(Counsel approached the bench and the following proceedings were had)

MR. BLOEMKER: That's not the same answer he gave before, and I would still request that he be struck.

MR. HALL: Mr. Edgar has always said that there was some doubt. As he just stated, he just wanted to make it clear that he has this association. Of course any juror might have some doubt about his ability, but he said that he believes that he can give a fair and impartial verdict.

THE COURT: He stated it very firmly I thought. I will overrule the challenge for cause.

■ The rules for determining the question Gordon raises are well defined and stated in *State v. Lovell*, 506 S.W.2d 441, 443, 444 (Mo. banc 1974). These include the fact a defendant is entitled to a full panel of qualified jurors before he makes peremptory challenges and the court's discretion in ruling upon challenges for cause will not be disturbed unless it is so manifestly against the record as to show an abuse of discretion. Further, the decision of the court "should rest upon the facts stated by the juror with reference to his state of mind and should not be allowed to depend upon the conclusions of the juror whether he could or would divest himself of a prejudice he admitted to exist in his mind." *Lovell* at 444.

The State and Gordon have stipulated that Mr. Edgar was one of the panel submitted to the parties from which they made

their strikes. It is further stipulated that Gordon used one of his peremptory strikes to remove Mr. Edgar from the panel.

Mr. Edgar was undoubtedly trying to answer the questions concerning his state of mind as truthfully as he could. He stated his life had been spent on the side of law enforcement. By reason of this, and his wife's current employment with the police department, he has close and intimate friends throughout the department. It is not surprising that Mr. Edgar expressed the feeling his experience would affect the judgment he would exercise in hearing this case. Neither is it unexpected that he expressed doubt that he could give both sides a fair and impartial hearing.

■ While Mr. Edgar, at the end of his voir dire, did state he did not think his association with law enforcement would affect his decision, a review of his entire examination reveals a clearly expressed doubt that he could accord Gordon a fair and impartial trial.

The evidence in this case vividly illustrates the reason it is vital to have a completely unbiased jury. Gordon was seen taking the coat in question by a store security officer, but when apprehended, he was wearing the coat which did not display any of the normal store tags. Gordon's half-sister testified she had purchased the coat from Macy's a short time earlier and had given it to him as a Christmas present. In this situation the jury was directly confronted with a choice of believing the security officer or the half-sister.

With the state of mind shown to exist in Mr. Edgar, it is reasonable to conclude he would have had difficulty in impartially resolving this conflict. This demonstrates an abuse of discretion in refusing to strike Mr. Edgar for cause. In any event, while the evidence here clearly shows the need for impartial jurors, this court concludes the court abused its discretion in refusing to strike Mr. Edgar based on his entire examination and without regard to the evidence he would have heard had he served. *State v. DeClue*, 400 S.W.2d 50 (Mo.1966).

As is frequently stated in cases of this nature, this in no wise impugns Mr. Edgar for his honesty or his candor in answering questions. It simply once again focuses attention on a troublesome aspect of the trial of a criminal case. Here, Mr. Edgar undoubtedly gave as fair and honest answers as he possibly could, but the conclusion must follow from the answers he gave that in fact he was influenced by his law enforcement service and association and would let this influence his judgment in sitting as a juror in this case.

■ Gordon also urges the court erred in admitting evidence of the retail price at which Macy's would sell the coat. The test of value in a stealing case is the market value of the property taken at the time and place of the offense. 52A C.J.S. Larceny § 118, p. 618. Evidence of the retail price of property is admissible to show its market value. *State v. Sorrell*, 95 Ariz. 220, 388 P.2d 429 (1964), *Lauder v. State*, 233 Md. 142, 195 A.2d 610 (1963).

There was no error in admitting the retail price of the coat.

The judgment is reversed and the cause is remanded.

All concur.