STATE of Missouri,
Plaintiff-Respondent,

v.

Larry Deroy THRIFT, a/k/a Lawrence
Deroy Thrift, Defendant-Appellant.

No. 10887.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 5, 1979.

C. R. Rhoades, Neosho, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Brenda Farr Engel, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

A jury found defendant, a second offender, guilty of burglary in the first degree, § 560.040 RSMo 1969, and the trial court sentenced him to 15 years' imprisonment. Defendant appeals.

On September 16, 1976, "around 12 o'clock noon," Ethel Walker was lying down in her bedroom in her rural home in Newton County. She heard a knock at her door. Mrs. Walker testified, "I went to see if it was a neighbor or relative, and since I was not feeling well, I did not answer the knock. . . . When I went to see, I saw the

man that broke into my house. . . . He did not break into my house at that time. . . . He drove out of my driveway and went across the highway to the neighbor's house."

Mrs. Walker further testified that the man, whom she identified as the defendant, knocked on the door of her neighbor's house and she "went back to the bathroom in the back of the house." She then heard a "commotion" at her back door, like someone "trying to open the door." The defendant then left the back door and "went back around to the front door." The front door consisted of the "big door" and the storm door, the latter being immediately exterior of the former. The storm door was "closed and locked." There was a noise at the front door and the defendant entered the house through the storm door and the "big door." Prior to the entry by defendant the "big door" was "unlocked and turned back."

Mrs. Walker testified that the defendant, with a gun in his hand, approached her and said, "I want money." Mrs. Walker told him she had no money and persuaded him to leave. He did so without further incident.

Ethel Walker was the only witness for the state who had personal knowledge that it was the defendant who entered her home. The state introduced photographs of the front door which were taken by detective Bob L. Roberts of the Joplin Police Department. According to Roberts the photographs showed marks which he characterized as "tool marks."

On this appeal defendant makes the valid contention that the trial court committed reversible error in failing to sustain defendant's challenge for cause directed to veniremen Clyde Sparks and Melvin Southern.

During voir dire examination prosecuting attorney Steve Lampo informed the prospective jurors that the case involved a burglary which occurred in September 1976, and that the victim was Ethel Walker, whose house was "just off Highway 43 about eight miles north of Seneca." The prosecutor then asked if any of the prospective jurors was acquainted with Mrs. Walk-

er. Sparks and Southern answered affirmatively. Each of the two veniremen also stated that he was acquainted with detective Bob Roberts of the Joplin Police Department who was to be one of the witnesses for the state.

The prosecutor then asked Mr. Sparks whether or not Sparks, if selected as a juror, "could listen to the evidence and go ahead and decide fairly and impartially, despite what you have heard about [the case]." Sparks answered, "yes." Sparks stated that Mrs. Walker lived not too far from him and that he had met detective Roberts several times through the Joplin R–8 School District.

After Southern had informed the prosecutor that he was acquainted with Ethel Walker, the prosecutor asked this question: "By reason of this acquaintance, you know about this particular case?" Southern answered, "yes, sir."

During the portion of the voir dire examination conducted by defendant's attorney, Walter Walker, the following transpired: (Emphasis added.)

"MR. WALKER: These two men that know Detective Roberts and Ethel Walker, would it take any evidence to dispel from your mind anything you have heard so far? In other words, would it take a little evidence to start even? We are dealing with your neighbor up there. Would you tend to lean her way a little bit?

VENIREMAN SOUTHERN: *I would tend to believe someone I know.*

MR. WALKER: *I think we are all that way. Do you feel that way, Mr. Sparks?*

VENIREMAN SPARKS: *I sure do.*

MR. WALKER: In other words, you would tend to believe someone you know? These are noddings—agreements to that effect. I would request and challenge on behalf of the defendant these two jurors who are neighbors.

THE COURT: As to Mr. Sparks and Mr. Southern, I recognize the answers you have

given. Do you think think that you can lay aside any ideas or pre-conceived conception you might have and listen to all the testimony that was given here and at the conclusion of the case, hear the instructions given by the Court and be fair to both parties involved here?

VENIREMEN SPARKS and SOUTHERN: Yes.

VENIREMAN SOUTHERN: I think I could be fair to both.

THE COURT: Request for challenge will be denied.

MR. WALKER: But you both feel you would tend to believe her instead of somebody else?

MR. LAMPO: I hesitate to object—

THE COURT: Overruled. He can ask the question.

MR. WALKER: How long have you known Mrs. Walker?

VENIREMAN SOUTHERN: Between eight and nine years.

VENIREMAN SPARKS: Nine years.

MR. WALKER: Would you feel ill at ease sitting on this jury?

VENIREMEN SPARKS and SOUTHERN: No.

MR. WALKER: *But you do tend to believe her over anyone else?*

VENIREMAN SPARKS: *Yes.*

MR. WALKER: How about Detective Roberts? Would you believe him?

VENIREMAN SPARKS: I don't believe I would because I haven't known him that long.

MR. WALKER: How about you, sir?

VENIREMAN SOUTHERN: He is more of an acquaintance in trading in my store.

*I would say I would believe him if he said something.*

MR. WALKER: He is a customer in your store?

VENIREMAN SOUTHERN: Yes.

MR. WALKER: How about Mrs. Walker? Is she a customer, too?

VENIREMAN SOUTHERN: Her husband and my father work together.

MR. WALKER: Family friends then?

VENIREMAN SOUTHERN: Yes.

Later in the voir dire examination by Mr. Walker defendant challenged for cause another venireman, Mr. Schmidt, and renewed his challenges directed to Sparks and Southern. Counsel stated to the court that Sparks and Southern "would believe what the complaining witness said, as they know her, and put more reliance on her testimony than other witnesses." The trial court sustained the challenge to venireman Schmidt and denied the renewed challenges. Thereafter defendant used two of his peremptory challenges to strike veniremen Sparks and Southern.

A defendant in a criminal case is entitled to a full panel of qualified jurors before he is required to make his peremptory challenges.[1] The trial court has wide discretion in determining the qualifications of a venireman and its ruling on a challenge for cause will not be disturbed in the absence of a clear abuse of discretion.[2]

"A determination by the trial judge of the qualifications of a venireman necessarily involves a judgment based on an observation of the demeanor of the venireman and, in the light of that observation, an evaluation and interpretation of his answers as they relate to whether he would be fair and impartial if chosen as a juror. The trial judge is in a far better position to make

**1.** *State v. Land,* 478 S.W.2d 290, 292 (Mo. 1972); *State v. Hill,* 556 S.W.2d 227, 229[1] (Mo.App.1977); *State v. Gordon,* 543 S.W.2d 553, 555[1] (Mo.App.1976).

**2.** *State v. Treadway,* 558 S.W.2d 646, 649[1] (Mo.Banc 1977); *State v. Cuckovich,* 485 S.W.2d 16, 22[11] (Mo.banc 1972); *State v. Scott,* 482 S.W.2d 727, 728 (Mo.banc 1972); *State v. Land,* 478 S.W.2d 290, 292[1] (Mo. 1972); *State v. Harris,* 425 S.W.2d 148, 155[8]

that determination than are we from the cold record." *State v. Harris*, 425 S.W.2d 148, 155[8] (Mo.1968).[3]

 This is an area where there is no "clear line of demarcation," [4] and an abuse of discretion is not demonstrated merely because an appellate judge, had he been sitting as the trial judge, would have ruled otherwise on the challenge for cause.[5] Of course the facts of the particular case control,[6] and any doubt as to the propriety of the trial court's ruling is to be resolved in favor of that ruling.[7]

 A defendant who seeks review of a trial court's denial of his challenge for cause need not, as a predicate to review, show that he used his peremptory challenge to dispose of the venireman or that his peremptory challenges were already exhausted.[8]

 A venireman is not a judge of his own fitness,[9] and if his answers on voir dire show it is doubtful whether he could accord the defendant a fair trial, the trial court should sustain the challenge for cause.[10]

Clearly the most important witness for the state was Ethel Walker. She alone identified the defendant as being the man who entered her home. Defendant, testifying in his own behalf, relied upon the defense of alibi.

The situation is akin to that in *State v. Spidle*, 413 S.W.2d 509 (Mo.1967) where the principal witness for the state was the vic-

tim and the principal witness for the defense was the defendant himself. In *Spidle* the supreme court held that the trial court abused its discretion in failing to sustain a challenge for cause directed to a venireman who was "strongly disposed to resolve factual issues in accord with the testimony of a particular prosecuting witness." The court said, at 512: "[A] defendant in a criminal case should not have to start out with a juror who feels that in case of a dispute he would have to take the word of the prosecuting witness."

 This court holds that the trial court abused its discretion in failing to sustain the challenges for cause directed to Sparks and Southern.

The judgment is reversed and the cause remanded.

All concur, except PREWITT, J., not participating because not a member of the court when case was submitted.

(Mo.1968); *State v. Hill*, 556 S.W.2d 227, 229[2] (Mo.App.1977).

3. To similar effect see *State v. Treadway*, 558 S.W.2d 646 (Mo.banc 1977) and *State v. Cuckovich*, 485 S.W.2d 16 (Mo.banc 1972).

4. *State v. Cuckovich*, 485 S.W.2d 16, 22 (Mo. banc 1972); *State v. Harris*, 425 S.W.2d 148, 155 (Mo.1968); see also *State v. Land*, 478 S.W.2d 290, 292 (Mo.1972).

5. *State v. Cuckovich*, 485 S.W.2d 16, 23 (Mo. banc 1972); *State v. Harris*, 425 S.W.2d 148, 155 (Mo.1968).

6. *State v. Cuckovich*, 485 S.W.2d 16, 23 (Mo. banc 1972); *State v. Scott*, 482 S.W.2d 727, 728 (Mo.banc 1972); *State v. Land*, 478 S.W.2d 290, 292 (Mo.1972).

7. *State v. Treadway*, 558 S.W.2d 646, 649[2] (Mo.banc 1977).

8. *State v. Morrison*, 557 S.W.2d 445, 447[1] (Mo.banc 1977).

9. *State v. Land*, 478 S.W.2d 290, 292 (Mo.1972).

10. *State v. Lovell*, 506 S.W.2d 441, 444[4] (Mo. banc 1974); *State v. Hill*, 556 S.W.2d 227, 229[3] (Mo.App.1977).