STATE of Missouri,
Plaintiff-Respondent,

v.

Samuel GRAY, Defendant-Appellant.

No. 45607.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 19, 1983.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
Aug. 29, 1983.

Application to Transfer Denied
Oct. 18, 1983.

Mary Dames, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Sandra Stratton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

A jury found appellant guilty of first degree assault, § 565.050 RSMo.1978, and stealing, § 570.030 RSMo.1978. He appeals from the judgment sentencing him to twenty years on the assault charge and two years on the stealing charge, the sentences to be served concurrently. The judgment is affirmed.

Appellant asserts the trial court erred in: (1) abusing its discretion by failing to excuse venirepersons Zykan and Hecht who indicated they might be prejudiced; (2) failing to give a mandatory definitional instruction on "deadly force;" and (3) submitting to the jury a typed MAI–CR2d instruction containing a handwritten interlineation. Appellant also contends the evidence was insufficient to sustain a conviction for stealing.

The evidence favorable to the verdict proved that on May 30, 1981 Vincent Jablonowsky, the victim, was watching television around midnight in the residence of the Wigglesworths, who were his friends and employers. Appellant arrived at the house after midnight, accosted Jablonowsky and, while threatening him with a butcher knife, demanded that Jablonowsky produce the money box which contained cash receipts from the operations of "The Little Store," a Wigglesworth family enterprise. Jablonowsky eventually revealed the whereabouts of the money box after continuing threats by appellant.

Appellant then informed Jablonowsky that he had the choice of sharing the contents of the money box with appellant or being killed. Jablonowsky chose the former and appellant removed some of the money from the box and stuffed it in Jablonowsky's pockets and his own.

Appellant then led Jablonowsky to the doorway of the residence and told him, "You are going to go your way and I am going to go mine." Jablonowsky then tried to escape by running into the yard, but appellant stabbed him three times as they scuffled.

A neighbor testified she saw the two wrestling out in the street with defendant poised over Jablonowsky as Jablonowsky lay on the ground. The defendant, holding a knife, raised his hand above Jablonowsky as Jablonowsky rolled away.

Defendant then ran off as Jablonowsky, bleeding profusely, stood up and approached the neighbor's house. The police came within minutes and Jablonowsky was taken to the hospital. He was critically wounded, required extensive surgery, and was hospitalized from May 31 to June 11, 1981.

Appellant's theory was that the stabbing took place in self-defense. Although he told the police when he was arrested that he was not at the Wigglesworth residence when the stabbing occurred, he told an entirely different self-defense story at trial which the jury obviously did not believe.

Appellant contends first that the trial court abused its discretion in denying his challenge for cause of prospective jurors Zykan and Hecht. The point is denied.

Venireman Zykan disclosed during voir dire that he was a retired bus driver and had been a victim of three robberies. In response to queries by appellant's counsel Zykan said it would be possible that his experience as a victim would influence him, that it would be difficult for him to follow the court's instructions and that he might possibly be influenced against a person accused of crime.

Zykan subsequently said, in response to the prosecutor's questions, that the state would have to prove appellant guilty beyond a reasonable doubt, that he would not make his decision until he had heard all the evidence, and that, in spite of his having been robbed before, he could set aside his past experiences and without prejudice judge the case on its facts.

Appellant moved to strike Mr. Zykan for cause after the appellant's attorney's questioning and again after the prosecutor's questioning. The trial court denied both motions.

Venireman Hecht disclosed during voir dire that she was the daughter of a retired police officer and the mother-in-law of a police officer. Mrs. Hecht answered appellant's counsel's questions by saying her relationship with police officers would influence her ability to sit on the jury, that she was more prejudiced toward the law, and that she probably would give at least some favor toward the state's side. But she told appellant's counsel that it would not be difficult to follow the instructions of the court.

Mrs. Hecht answered the prosecutor's questions by saying she would not convict the defendant unless the state proved his guilt beyond a reasonable doubt and that she would set aside any feelings of prejudice and decide the case solely on the evidence. Appellant's motions to strike Mrs. Hecht for cause were also denied.

The fundamental purpose of the voir dire examination is to determine

whether each individual "would be fair and impartial as a juror." *State v. Harris,* 425 S.W.2d 148, 155 (Mo.1968). A defendant in a criminal case always has the right to a full panel of qualified jurors before exercising his preemptory challenges. *State v. Morrison,* 557 S.W.2d 445, 446[1] (Mo. banc 1977); *State v. Pride,* 567 S.W.2d 426, 432[8] (Mo.App.1978).

■ It is within the discretion of the trial court to determine whether or not a venireman should be stricken for cause. In *State v. Treadway,* 558 S.W.2d 646, 649[1, 2] (Mo. banc 1977) *cert. denied* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978), overruled on other grounds, *Sours v. State,* 593 S.W.2d 208, 210[1] (Mo. banc 1980), the Missouri Supreme Court stated:

> In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion.... All doubt should be resolved in favor of the finding of the trial court because he is in a better position to determine a challenge for cause than an appellate court.

■ There was no abuse of discretion in the trial court's refusal to strike either venireman Zykan or Hecht for cause. Although venireman Zykan appeared to indicate in his answer to questions by the defense that his experience as the victim of crimes might cause him to be influenced against a person accused of a crime, upon further questioning by the prosecutor Mr. Zykan said he would not convict unless the defendant was shown to be guilty beyond a reasonable doubt. In addition, Mr. Zykan said unequivocally that he could put aside his past experiences and judge the case on its facts. Under these circumstances it cannot be said the trial court abused its discretion in refusing to strike Mr. Zykan for cause. *State v. Treadway, supra.*

Appellant relies on *State v. Land,* 478 S.W.2d 290 (Mo.1972) to substantiate his contention that it was error for the trial court to deny his motion to strike Mr. Zykan for cause. In *Land,* the trial court

termed the juror's prejudice in favor of the state subconscious, but refused to strike him. 478 S.W.2d at 292. The Supreme Court held that, having made that specific finding of subconscious prejudice, the trial judge should have stricken the potential juror, and that failing to do so was an abuse of discretion. *Id.* at 292–93.

The case under review is distinguishable from the facts in *State v. Land.* In *Land,* the trial court made a factual determination that the venireman was subconsciously prejudiced toward the state, 478 S.W.2d at 292[3]. Thus, the trial court erred in not striking him for cause. There was no such factual determination of prejudice by the trial court here.

Appellant relies on *State v. Ealy,* 624 S.W.2d 490 (Mo.App.1981) to support his contention that Mrs. Hecht should have been stricken. *Ealy* is distinguishable. In *Ealy* a venireman stated that she "might be more prejudiced" in favor of a police officer's testimony and that she would "probably" believe a police officer over another witness. 624 S.W.2d at 492. No further questions were posed to the venireman, and the Court of Appeals held that the failure to remove for cause was error.

■ In *Ealy* the court stated: "In numerous Missouri cases, no error has been found where the trial court overruled a challenge for cause to a venireman who initially expressed a tendency to believe a police officer over other witnesses, but who upon further questioning indicated an ability to evaluate all testimony by the same standard and accord both sides a fair trial ...." 624 S.W.2d at 493. The language is applicable to the voir dire questioning of Mrs. Hecht. The further questioning of Mrs. Hecht was sufficient to allow the trial judge, in his discretion, to find she had the ability to be a fair and impartial juror. The trial court did not abuse its discretion.

In appellant's second point he charges that the trial court erred in failing to give to the jury an instruction defining "deadly force." The point has no merit.

■ Appellant submitted MAI–CR2d 2.41.1 on self-defense, and that instruction

was given to the jury. Appellant did not request an instruction on the definition of "deadly force," but the Notes on Use to MAI–CR2d 2.41.1, Note 2, direct that a separate instruction defining "deadly force" be given whether the definition is requested or not. Failure to give the definition instruction was error, the prejudicial effect of which is to be judicially determined. Rule 28.02(e).

The state asserts that the error was not preserved for review and therefore must be considered on a plain error basis because no adequately specific objection was made either at trial or in appellant's motion for a new trial in which he said, "The court erred in failing to instruct the jury by giving the jury the definition of deadly force as used in Instruction No. 12."

No objection at all was made at trial to the failure to include a definition instruction on "deadly force" because appellant submitted the only instruction in which the term "deadly force" was used, Instruction No. 12 on self-defense. Appellant objected generally only to the state's instructions.

The state points out in addition that when appellant's brief was originally submitted, it did not set forth the prescribed definition of "deadly force" and therefore failed to comply with Rule 30.06(e); *State v. Buskuehl,* 626 S.W.2d 651, 653 (Mo.App. 1981). The prescribed definition was submitted after the state's brief was filed as an amendment to appellant's brief.

■ Because the definition is required by the Notes on Use, whether requested or not, this court will consider the new trial assignment of error as though it had been properly preserved for appellate review, even though appellant's motion does not say exactly in what respect the failure to give the jury an instruction defining "deadly force" was error.

Appellant's brief treats extensively the law relating to the use of approved instructions and the Notes on Use. Many cases are cited which point out that approved instructions must be used where applicable and that the Notes on Use must be followed religiously. There is no quarrel with these general statements of the law. There is

also no quarrel with appellant's argument that technical legal terms must be defined when they are used in jury instructions.

■ However, the question of prejudice is hardly discussed in appellant's brief. Nowhere does he explain where he was prejudiced by the failure to define "deadly force" for the jury. The only place in the instructions which were given the jury where the term "deadly force" was used was in the self-defense instruction. That instruction says in part, "The use of physical force including the use of deadly force is justifiable if used in lawful self-defense." Obviously the jury did not believe appellant's story about self-defense. It is difficult to see how a specific definition of "deadly force" would have helped the appellant in any way or how the omission of the definition prejudiced him. This court finds that the failure to follow the Notes on Use in this case was not prejudicial. Rule 28.02(e).

■ Appellant next charges prejudicial error in submitting jury Instruction No. 9, MAI–CR2d 19.04.1 containing a handwritten interlineation of the phrase "in lawful self-defense," because it was a deviation from the pattern instructions. The point has no merit.

The instruction submitted to the jury was identical word-for-word with MAI–CR2d 19.04.1. It is unlikely that the written interlineation influenced the jurors. The questioned instruction was the second degree assault verdict director. Appellant's contention is frivolous at best, especially considering that appellant was convicted of first degree assault, not second degree. See *State v. Cook,* 428 S.W.2d 728, 732[3] (Mo. 1968).

■ In appellant's fourth and final point he maintains the trial court erred in denying his motions for a directed verdict on the charge of stealing. He argues the trial court should have directed a not guilty verdict on stealing because the evidence was insufficient to prove ownership and possession of the currency and lack of consent to the appropriation of the currency. Appellant's final point is also denied.

Section 570.010(9) RSMo.1978 establishes that both ownership and possession need

not be shown to establish stealing but that either will suffice. Possession by the victim was clearly established. Vincent Jablonowsky possessed the cash box from which appellant took the money at knife point. The Wigglesworths trusted him with the knowledge of its hiding place. The Wigglesworths owned The Little Store from whence the money came. The issue of legal character of The Little Store is irrelevant. The evidence showed the money belonged to it, or the Wigglesworths, regardless of whether the store had a separate existence. See *State v. Sims,* 395 S.W.2d 445, 448–449[4] (Mo.1965); *State v. Parker,* 324 Mo. 734, 24 S.W.2d 1023, 1026[9, 10] (1930).

Lack of consent was shown by the testimony of Edward J. Wigglesworth, Jr. who said he was in charge of The Little Store on the day of the robbery and he had not given appellant permission to take the money. The fact that appellant had to take the cash from the victim at knife point also proves that no consent was given. All of the elements of the charge of stealing were proved.

The judgment is affirmed.

DOWD and GAERTNER, JJ., concur.